CALDWELL HARDY, TRUSTEE, ET AL. v. MAURY WARD.

(Filed 1 April, 1909.)

1. Timber Contracts—Options—Deeds and Conveyances—Vendor and Vendee—Tender of Deed.

An option to purchase standing timber upon condition that when the vendee should signify his acceptance within the time specified the vendor should "at once make, execute and acknowledge" a deed for the timber and deliver it, "upon compliance with the terms of sale," makes it the duty of the vendor to tender the

deed upon being notified by the vendee of his acceptance, unless such tender has been waived. (*Allston v. Connell*, 140 N. C., 485; *Trogden v. Williams*, 144 N. C., 192, cited and approved.)

2. **Timber Contracts—Deeds and Conveyances—Vendor and Vendee—Options—Acceptance—Tender of Payment.**

When the language of a contract giving an option to purchase standing timber within a specified time does not clearly express the intention of the parties, regard will be had to the conditions and circumstances surrounding the particular transaction, such as the increasing value of the timber, possession, the nominal consideration named, etc., upon the question as to whether time was "of the essence of the contract" for the completion of the purchase.

3. **Same.**

When a thirty-day-option purchase of standing timber is given for a nominal consideration, specifying that upon a cash payment and notes for the balance of the purchase price the deed will be delivered, it is necessary to tender payment upon the specified terms, and a mere acceptance within the period ·fixed is insufficient.

4. **Timber Contracts—Options—Deeds and Conveyances—Vendor and Vendee—Tender of Deed—Waiver.**

When it appears that the vendee, under an option to purchase standing timber, subsequently undertook, with the consent of the vendor, to have his attorney prepare the deed, it was a waiver of the obligation of the vendor, expressed in the option, to tender the deed.

5. **Same—Principal and Agent—Attorney and Client.**

The contract obligation of the vendor to make, execute and deliver a deed to standing timber, under an option given by him, is waived, as a matter of law, when by uncontradicted correspondence in evidence it appears that the parties subsequently agreed that the vendee's attorney should prepare the deed, and the vendor had furnished all information desired by him for that purpose.

6. **Contracts, Entire—Interpretation—Questions of Law—Jury—Harmless Error.**

The interpretation of an entire written agreement is a question of law; and while it is error to submit it to the jury, it is cured by the jury answering it correctly. ·

7. **Contracts—Damages—Strict Compliance—Burden of Proof.**

Damages for breach of an executory contract, in which there is no equitable element, can only be recovered by plaintiff's proving compliance with his obligation thereunder.

ACTION tried before *Lyon, J.,* and a jury, at August Term, 1908, of DUPLIN.

On 22 December, 1905, defendant executed and delivered to plaintiff, trustee for the Carolina Timber Company, a paper writing, whereby, in consideration of one dollar, he sold the company "the right or option of purchasing from said party of the first part, at any time within thirty days from the date of this agreement, in fee simple and with general warranty, at the price hereinafter named, all the pine timber ten inches in diameter. * * * If the said company, its assigns or successors, shall avail themselves of this option and purchase said timber hereunder, then, when they shall have so signified their intention of doing, the said party of the first part shall at once make, execute and acknowledge a good and sufficient deed, with warranty, to the said company, its assigns or successors, upon compliance by them with the terms of sale, as above prescribed," etc. The price to be paid for the timber was $7,500, of which $2,500 was to be paid "cash upon delivery of deed," the balance in five annual installments of $1,000 each, carrying interest from date. The contract contained provisions in regard to the time within which the timber was to be cut, not material to the decision of this appeal. The contract was signed by defendant, duly proven and registered.

On 9 January, 1906, the plaintiff's representative addressed to defendant the following letter: "This is to notify you that my company will exercise your option, and I will be glad if you will assist Mr. Beasley in making up the deed. I talked to him over 'phone to-day and told him to push your matter through at once. I am writing to Mr. Beasley, telling him to call on you to help him on your deed." Mr. Beasley was plaintiff's attorney.

On 8 January, 1906, Mr. Beasley wrote defendant: "I have been employed by the Carolina Timber Company to trace your title, and will thank you for any information as to books and pages where your deeds are recorded. You can look over your papers, and it will save me lots of time." Defendant sent Mr. Beasley, "as per request," a list of deeds, dates, pages and books of registration, etc., covering the lands included in the option. At the conclusion of the list he writes, in regard to two tracts,

that he "can couple them without survey," saying: "Write me if you wish this done, to facilitate writing deed. The only complications in title are on the Ira Robinson tract and J. C. Mills tract. This is not to conflict with closing option. I am to give security to indemnify the company in case of any legal restraint. Draw satisfactory papers for me to sign for that purpose." This letter is without date. On 12 January, 1906, Mr. Beasley wrote defendant, asking information in regard to title to several tracts, and defendant answered the letter, 15 January, saying: "I expect to straighten up the titles as opportunity affords, but wished to do so at suitable times. Draw such paper as is satisfactory to your company, and do not make it unreasonable. We wish them to have what they buy. * * * Hope you will be able to get papers ready soon." Mr. Beasley wrote defendant 18 January and again on 20 January. In the last letter he said: "The Carolina Timber Company requests me to write you that they will take your timber, according to option, as soon as you can furnish them a fee-simple title to the same." On 26 January, 1906, Mr. Beasley wrote defendant: "The Carolina Timber Company is ready to pay you according to agreement, and we are still standing by what we promised to do, and we know you will do likewise. The money and notes are ready for you."

Defendant sold the timber to another purchaser, 23 January, 1906, for $10,000. The plaintiff tendered the money 30 January and notes bearing date 26 January. Plaintiff sues for specific performance and, if that cannot be had, for damages. Plaintiff excepted to the admission of the letters from Beasley to defendant.

His Honor submitted the following issues to the jury:

1. "Did the defendant enter into an agreement with the plaintiff, of date 22 December, 1905, as alleged in complaint?

2. "Did the plaintiffs signify their intention of availing themselves of the purchase under their option and accept the terms thereof during the thirty days mentioned therein?

2½. "Did plaintiff make an offer to accept the option of December, 1905, as modified by the letter of Meyers, dated 9 January, 1906, and introduced in evidence, and if so, did the defendant accept the modification made by said letter?

3. "Were the plaintiffs willing and able to perform their part of the said contract, after accepting the terms of same, prior to 23 January, 1906?

4. "Has the defendant wrongfully broken the said contract and refused to execute deed thereunder, as alleged in the complaint?

5. "What damages, if any, are plaintiffs entitled to recover of the defendant?

6. "Did the plaintiff tender purchase price before the expiration of thirty days?

7. "Did the defendant tender deed before the expiration of thirty days?"

By consent, the sixth and seventh issues were answered "No." Plaintiffs requested his Honor to instruct the jury that if they believed the evidence they would answer the second issue "Yes." This was refused, and plaintiff excepted. The same request was made as to the third and fourth issues, which was refused, and plaintiff excepted. Plaintiff excepted to the submission of the issue numbered 2½. The court, by consent, answered the first issue "Yes," and instructed the jury that the burden of proof was on the plaintiff to establish the affirmation of the second issue, and that if they had satisfied them that they accepted the terms of the contract within thirty days, to answer the issue "Yes." The jury answered the issue "No." On the issue numbered 2½ his Honor instructed the jury that if they were satisfied that plaintiff agreed that Beasley was to write the deed and plaintiff (defendant) consented to it, they would answer the issue "Yes"; otherwise they would answer it "No." "If you find from the greater weight of the evidence that such acceptance as was made by the plaintiff was contained in the letter of Meyers, dated 9 January, 1906, and that defendant accepted the modifications contained in said letter and acted upon by them, you should answer the issue 'Yes.'" Plaintiff excepted. His Honor instructed the jury that if they answered the third issue "No" they should answer the fourth issue "No" and the fifth issue "Nothing." To this instruction plaintiff excepted. The jury answered the third and fourth issues "No" and the fifth issue "Nothing."

---

HARDY *v.* WARD.

---

His Honor rendered judgment for the defendant upon the verdicts, to which plaintiff excepted and appealed.

*J. O. Carr* for plaintiffs.
*Simmons, Ward & Allen* for defendant.

CONNOR, J., after stating the case: Eliminating immaterial matter, the verdict of the jury, read in the light of the pleadings and the evidence, discloses this case: Defendant, on 22 December, 1905, gave to plaintiff the right or option of purchasing, at any time within thirty days "from the date of the agreement," the timber described in the contract, with the provision that if the plaintiff should avail itself of the option "and purchase the timber" thereunder, and should so signify its intention, the defendant should "at once make, execute and acknowledge" a deed for the timber and deliver the same to the defendant "upon compliance by it with the terms of sale"—that is, paying $2,500 cash and executing its notes for $5,000, payable in five annual installments. On 9 January, 1906, plaintiff signified its acceptance of the option by writing the letter, of that date, set out in the record. Subsequent to the receipt of that letter the correspondence between Mr. Beasley (plaintiff's attorney) and the defendant took place, concluding with the letter of 20 January, 1906, and the sale of the timber by defendant, 23 January, 1906, to a third party. It is conceded that no deed was at any time tendered by defendant, and no money was tendered by plaintiff until 30 January, 1906. Plaintiff's exceptions to the refusal of his Honor to give the instructions asked, and to the instructions given, present the questions, the solution of which are decisive of the appeal. Was the plaintiff required by the terms of the option to tender the money and notes within thirty days? Did the letter of 9 January modify the terms of the option and put upon plaintiff the duty of preparing the deeds for defendant to execute, and thereby relieve him of the obligation imposed by the contract to "at once make, execute and acknowledge" the deeds when plaintiff should signify its acceptance of the option? The learned counsel for plaintiff insists that, by a proper construction of the paper writing, the "right or option" given plaintiff was to signify its purpose *to buy* within thirty days—that

is, to enter into a contract of purchase for the land, as distinguished from a completed purchase within the time named; that when, at any time, within the thirty days, plaintiff signified its acceptance of the option, the relation of vendor and vendee was created, no time being fixed within which the money was to be paid and the deed executed; that in this condition of the transaction both parties were allowed a reasonable time to complete the trade. It is true that an option is a mere proposition on the part of the owner of the land to sell, and, until accepted by the person to whom it is made, is unilateral. We had occasion to consider the several definitions of the term, and the legal rights and liabilities growing out of it, in *Allston v. Connell,* 140 N. C., 485, and *Trogden v. Williams,* 144 N. C., 192. We found a very satisfactory discussion of the duties imposed upon the person to whom the option is given in the opinion of *Woods, J.,* in *Weaver v. Burr,* 31 W. Va., 736. In that case the option was in the following words: "I am willing to sell my land * * * for the price of $6.25 per acre, cash; and the parties for whom Mr. H. are negotiating for said land shall have the privilege of buying said property at said price and on said terms, for sixty days from 7 June, 1883." After a very exhaustive discussion, with a wealth of authority, in regard to the general principles of law applicable to options, he says, in regard to the one under consideration: "The period of sixty days from 7 June, 1883, mentioned in the option, within which plaintiff had the privilege of buying said land at the price of $6.25 per acre, cash, expired on 6 August, 1883. During the whole of that period, and during the whole of the said 6th of August, the plaintiffs had the privilege of converting the offer of John Burr into a valid and binding contract by an unconditional acceptance of and compliance with the terms thereof. They could not do so by any other acceptance, nor could they comply with said terms in any other manner than by actual payment or tender of the whole price of the land before the sixty days expired. * * * It was their privilege to accept unconditionally, and comply with the same by paying or tendering the cash within the sixty days, and thus secure to themselves the right to compel John Burr to perform his contract." In *Watson v. Coast,* 35 W. Va., 463, the option contained no reference

to payment, in cash or otherwise. It was a simple proposition to sell within a fixed period, concluding: "If not accepted, as provided, this agreement is null and void." The acceptance was by telegram: "Will take property. Meet me at Toronto, first train." The court, distinguishing the case from *Weaver v. Burr, supra,* held that tender of the cash was not a condition precedent to the conversion of the option into a contract. *Brannon, J.,* referring to *Weaver's case,* said that the majority of the Court "construed the cash payment in the option in that case as an act required by it to be done within the limit, the option having prescribed cash payment as part of the terms, further providing that the parties should have the privilege of buying the property at said price and on said terms, for sixty days, thus including, as three judges thought, cash payment within the sixty days. But here cash is not mentioned. The only thing required to be done within the limit assigned by the option is acceptance." The learned Justice quotes, with approval, the language of Professor Pomeroy: "Where the contract is really an offer on one side, with a provision that this offer must be assented to and accepted, where a mere acceptance is contemplated, or payment must be made, where payment was the act of acceptance contemplated, at or before a specified date, then, of course, the act of assent or payment must be done within the prescribed time, and time is from the very form of the contract essential. If, therefore, a vendor agrees to convey, if payment be made, at or before a given date, or if an option is given which is to be accepted by payment within a given time, then the time of payment is certainly essential; in fact, payment is a condition precedent to the vesting of any right in the vendee." Contracts, sec. 387. With these general principles and two well-considered opinions to aid us, we inquire: what, in the light of the facts in this case, duty was imposed upon the plaintiff to entitle it to demand specific performance of the option or to bring it into contractual relations with the defendant? If the language used does not clearly express the intention of the parties, we must have regard to the character of property with which they were dealing, the conditions by which they were surrounded and other circumstances throwing light upon the transaction. It must be noted that the subject-matter of the transaction was

standing timber, and not the land itself. We may also note, as
appears from the numerous appeals in this Court, and the recent
history of the increasing demand, with rapidly increasing value
of standing timber, that it would be unreasonable to suppose
that the defendant intended to "tie up" his valuable timber with-
out any consideration paid by plaintiff for an almost indefinite
time, and, by the simple notice of acceptance, to come under
a contractual obligation in which time was not "of the essence."
It is in evidence that plaintiff had several "buyers" of timber in
the section, and that the contracts were drawn by it, usually a
printed form, which persons agreeing to sell timber were called
upon to sign. The plaintiff assumed no obligation and paid
nothing for the option, the recited consideration being one dol-
lar. If the language used in the option is of doubtful meaning,
it should be construed most strongly against the plaintiff. The
option given is "the right of *purchasing*" within thirty days.
In *Weaver's case* the option gave "the privilege of buying."
We can perceive no substantial distinction between cases in this
respect. If other language does not modify that which we have
quoted, we should hold that the plaintiff acquired by the option
the right to purchase the timber by tendering the cash and notes
within thirty days. This would, we think, effectuate the inten-
tion of the parties, closing the transaction within the time fixed.
The further provision, however, clearly shows that the money
was to be paid and the notes tendered "upon delivery of the
deed," and the defendant was to "make, execute and acknowledge"
the deed "at once"—when the plaintiff signified that it would
avail itself of "the option and purchase said timber." This lan-
guage imposed upon the defendant the duty of making—that is,
preparing, executing and tendering—the deed before the plain-
tiff was required to tender the money. It is clear that, as the
contract was drawn and executed, the defendant was under obli-
gation to prepare and tender the deed after notice that plaintiff
desired to "exercise the option." Did the letter of 9 January,
1906, modify or change the obligation of the parties in this
respect? The answer to this question is dependent upon the
construction placed upon the letter of 9 January and the subse-
quent correspondence between plaintiff's attorney (Mr. Beasley)
and defendant. In the letter of 9 January plaintiff says: "I

will be glad if you will assist Mr. Beasley in making up the deed. * * * I told him to push your matter through at once. I am writing to Mr. Beasley, telling him to call on you to help him on your deed." This language is a clear expression of a purpose on the part of plaintiff that its attorney will write the deed. Mr. Beasley put this construction upon the terms of his employment by plaintiff. On 8 January, a day prior to the letter of plaintiff to defendant, he writes defendant, "I have been employed by the Carolina Timber Company to trace your title," asking him to send information in regard to his deeds, etc. Defendant complies with the request, sending memorandum of dates, books, pages, etc., of registered deeds. He calls attention to complications in the title of two tracts, but says: "This is not to conflict with closing option. I am to give security to indemnify the company in case of any legal restraint. Draw satisfactory papers for me to sign for that purpose." On 15 January defendant writes in regard to details, concluding: "Hope you will be able to get papers ready soon. If you wish anything further, kindly advise me." The letter dated 20 January appears to have been "postmarked" at Kenansville, "24 January, 6 A. M., 1906," and at Rose Hill, its destination, "24 January, 9 A. M., 1906." Plaintiff says that he received it 24 January. He says: "I told him on the 20th that I wanted to close the matter. * * * Plaintiff had not notified me before then that it would approve and accept title contract."

Mr. Arringdale, a witness for plaintiff, says that he was with defendant one week before the expiration of the option, and he acknowledged that he had sold the timber to plaintiff; that he told defendant that Beasley would help him, and that "we were ready to close up the transaction"—to get his papers ready; said he would do so right away.

Mr. Meyers, who wrote the letter of 9 January, testified that he got the money and notes "three or four days after the option was out. * * * Beasley was our attorney. There was strong competition in this community for purchase of timber. This was not usual form, but was one of Camp Manufacturing Company's options."

Plaintiff insists that Mr. Beasley was defendant's attorney to draw the deed, and that, therefore, the letters are not competent evidence against it. We do not concur in this view. Plaintiff's witness, Meyers, who wrote the letter of 9 January, expressly says, "Mr. Beasley was our attorney." The entire evidence is consistent with this statement.

Plaintiff insists that his Honor should not have submitted issue numbered 2½ to the jury, but should have construed the letters and held as a conclusion of law that they did not modify the contract. We incline to plaintiff's view in this respect; but if the jury have decided the question—construed the letters correctly—there is no prejudicial error in the course pursued by his Honor. It is elementary that if a question of law be submitted to the jury and they decide it correctly, the error is cured by the verdict. If the letter of 9 January so modified the original contract or option as to relieve the defendant of the duty of preparing the deed and impose upon the plaintiff that duty, it is conceded that no deed was prepared or tendered. The parties evidently understood that, notwithstanding the terms of the original option contract, Mr. Beasley was to prepare the deeds and the contract of indemnity. We do not find any evidence tending to show a failure on the part of defendant to furnish to him the information necessary to do this. His letter, giving information, while not dated, was evidently written upon receipt of and in reply to the letter from Mr. Beasley of 8 January. Mr. Beasley acknowledged receipt of this letter on 12 January, saying that he had "traced up most of your titles." He makes inquiry about title to several tracts. Defendant answers on 15 January, giving details and concluding, "I believe this covers your questions." He explains that all of the titles are clear, except two tracts, and he had before written Mr. Beasley that the complications in regard to them were not to delay closing the transaction; that he was to give indemnity to plaintiff. We think that the letters show that plaintiff's attorney was to prepare the deeds, and that on 22 January, 1906, defendant was not in default in closing the transaction. The jury found that the acceptance of the option by plaintiff was subject to the modification in this respect. We concur in this conclusion. That time was of the essence of the contract was recog-

nized by both parties, and, we think, correctly so. If the parties agree upon a day of performance, in the absence of waiver or those providential interventions recognized as sufficient to relieve them from strict performance, the courts are not permitted to do so. The equitable doctrine that, in executory contracts for the sale of land, time is not of the essence, is subject to well-defined exceptions. Among the circumstances which will take a contract out of the operation of the doctrine are "the nature of the property or the surrounding circumstances which would make it inequitable to interfere with and modify the legal right." Bispham Eq., 391. Among the contracts mentioned by Mr. Bispham which, by reason "of the subject-matter," are exceptions to the doctrine are contracts for sale of "trades or manufactories and mines." He further says: "As to 'surrounding circumstances,' which may render time of the essence of the contract, they must, of course, depend upon the facts of each particular case, such as whether the value of the property has greatly diminished, whether the vendee has bought to sell again, and so forth. Indeed, in this country, the fact that land bears a much more commercial character than it does in England, is subject to more fluctuations and has more of a speculative value, has led to not a few expressions of judicial opinion that time ought as a general rule to be considered as of the essence of a contract. But perhaps the safest statement of the law is that the general rule is the same in the United States as in England, but that exceptions growing out of the circumstances of the individual transaction are more numerous and looked upon with more favor." Bispham, 394. It will be found, we think, upon examination of our reports, that the equitable doctrine has usually been applied to cases when upon the execution of a bond for title by the vendor and a bond for the purchase money by the vendee the latter has been let into possession of the land, and both parties, by their conduct, have acquiesced in the *status quo,* notwithstanding the lapse of time. This was the case in *Falls v. Carpenter,* 21 N. C., 237, followed in *Scarlett v. Hunter,* 56 N. C., 84, *Pearson, J.,* saying: "When there is a contract for the sale of land, the vendee is considered, in equity, as the owner, and the vendor retains the title as security for the purchase money. He may rest satisfied with this security as long as he

chooses, and when he wants the money he has the same right to compel payment by a bill for a specific performance as the vendee has to call for title." In such cases "It is taken for granted that the parties are content to allow matters to remain *in statu quo* until a movement is made by one side or the other." The reason upon which these and similar cases are decided fails when the subject-matter of the contract is standing timber, mines or property of which the vendee is not let into possession and the value of which is fluctuating. While we do not question the wisdom or justice of the doctrine which has received the sanction and approval of the chancellors for centuries, we do not think that it should be extended so as to include contracts which, on account of the subject-matter, surrounding circumstances, etc., would, in its application, defeat the intention of the parties and subject property to unreasonable burdens not in contemplation of the owners when entering into the contract or giving an option. While the courts will not unduly restrict the freedom of contract or constitute themselves guardians for the owners of such property by refusing to enforce the execution of contracts, fairly made, free from obscurity, the terms of which are understood by the parties, we cannot fail to see from the records of this Court that by printed contracts, skillfully drawn, sometimes of difficult construction, valuable property rights are disposed of and burdens of uncertain extent and more uncertain duration are imposed upon lands. When the enforcement of these contracts is sought by appeal to the equitable powers of the Court, a due regard to the rights of parties and the conservation of one of the most valuable natural resources of the State imposes upon us the duty of requiring that the contract shall be free from ambiguity, understood by the parties and based upon a valuable consideration.

In this case it is manifest that specific performance cannot be had, because the defendant has parted with his title before the suit was instituted. Recognizing this difficulty, plaintiff asks for damages. In this aspect of the case, there being no equitable element, it must allege and prove strict performance of the contract on its part, according to its terms as modified. This it cannot do. We have given the record and the carefully

prepared argument of counsel a careful consideration, and are of the opinion that there is no reversible error. Let this be certified.

No Error.