O. H. CLARK AND F. A. SILVER v. EAST LAKE LUMBER COMPANY.

(Filed 21 February, 1912.)

1. Pleadings—Defenses, Inconsistent.

An action brought by an agent to sell lands to recover his commissions of sale, alleging the wrongful refusal of the owner to convey them to a purchaser he had found who was ready and able to pay the purchase price; and also alleging damages upon the ground that the owner had represented his title to be good, when it was afterwards ascertained to have been defective, which prevented the sale, sets forth inconsistent causes of action.

2. **Principal and Agent—Vendor and Vendee—Commissions on Sales —Lands—Purchaser, "Ready, Able, and Willing."**

For an agent to recover commissions for the sale of lands, he must show that he found a purchaser who was ready, able, and willing to buy upon the terms prescribed by the owner.

3. **Contracts—Option—Definition—Propositions—Acceptance.**

An option is a right acquired by contract to accept or reject a present offer to sell. It remains only a proposition until its acceptance identical with the offer.

4. **Same—Principal and Agent—Vendor and Vendee—Terms.**

An agent to sell lands upon commission procured an option to be given by the owner to the proposed purchaser to buy a certain number of acres of land more or less, for which the owner would execute a deed with general warranty, provided that the purchase, if consummated, would be at a designated place after at least five days prior notice given the owner: *Held*, the agent was not entitled to his commissions when the acceptance was for the specific number of acres, was for a clear and undisputed title for the whole tract, and the notice of acceptance was not given to the owner as provided for in the option.

5. **Contracts—Vendor and Vendee—Option—Title.**

The vendee under an option of purchase of lands is not required to take a disputed title, when he has agreed to accept only a good title to the lands, though he was advised by his attorney that the litigated title could, in his opinion, be cleared up.

6. **Contracts—Options—Vendor and Vendee—Principal and Agent— Misrepresentations—Damages—Evidence.**

An agent for the sale of lands brought his action against the owner for damages alleged to have been sustained by him from the owner's misrepresentation of title, and the consequent loss of the sale to a purchaser whom he had procured under an option: *Held*, (1) he could not recover the expenses he had incurred prior to the date of the option he relied on; (2) it was necessary for the agent to show he relied on the alleged misrepresentations of title by the owner; (3) that under an agreement that the acceptance was subject to an investigation of title, it is necessary that the title be found acceptable and clear by the attorney selected; (4) there must be evidence of the value or amount of the work claimed by the agent as damages; (5) there must be evidence to show the connection between the representations alleged to have been made by the owner and the damages claimed on that account.

APPEAL from *Cline, J.*, at Fall Term, 1911, of DARE.

CLARK v. LUMBER CO.

The plaintiffs allege two causes of action. The first is that on or about 24 May, 1905, the defendant employed the plaintiffs to sell for it a certain tract of land, particularly described, and agreed to pay them 5 per cent commission on the purchase price, which should not be less than $220,000; that they procured a purchaser at said price, who was ready, able, and willing to buy; that the defendant was duly notified thereof, and it refused to make title to said purchaser, and refused to pay the plaintiffs their commissions.

The second alleges the contract of 24 May, 1905; that the defendant represented that they had a perfect title to said lands; that relying on this representation, the plaintiffs represented to the prospective purchasers that the title was good; that it became necessary for said purchasers to expend $9,752· in the examination of said lands, which they did; that after this expense was incurred it was found that the title was not good, and said purchasers would not accept it; and that the plaintiffs had paid to said purchasers the amount expended.

On 23 January, 1905, the defendant agreed to pay the plaintiff Silver commissions to negotiate a sale of its Dare County lands, containing 167,555 acres, more or less, and on the same day executed its option to William O'Brien, a prospective buyer, procured by said Silver, which option, unless accepted, expired on 28 February, 1905.

The plaintiffs offered evidence tending to prove that the plaintiff Clark was equally interested with the said Silver in said commissions, and that F. W. Heimick and M. H. Alworth were equally interested with O'Brien in said option. Also that said option was extended by mutual consent and was used as a basis for an option given in May, 1905.

On 24 May, 1905, the defendant· gave an option to buy said lands to said Alworth and Heimick, the material parts of which are as follows:

"That for and in consideration of the sum of $1 to the party of the first part in hand paid by the parties of the second part, and for other good and valuable considerations, the receipt whereof is hereby acknowledged, the party of the first part has ·granted unto the parties of the second part the exclusive option

or right to purchase from the party of the first part all of the land owned by the party of the first part in Dare County in the State of North Carolina, said lands consisting of 167,555 acres, more or less, being the same premises particularly described in a deed given to the said party of the first part by the Peoples Bank of Buffalo *et al.,* and recorded in the office of the Register of Deeds in Dare County, 6 December, 1904; said purchase to be for the sum of $220,000, payable in manner as follows, to wit: $40,000 cash at the date of the deed under this option, the balance of the purchase price to be paid as follows:

(Terms omitted.)

"This agreement or exclusive option is also given to the parties of the second part upon the express condition that the parties of the second part shall at once employ a competent attorney and commence an examination of the title of all of said property without delay. One of the attorneys to be employed by the said parties of the second part shall be W. D. Pruden of Edenton, North Carolina, if possible; and it is expressly agreed by the parties of the second part that if they shall not have notified the said Pruden by telegram or otherwise within three days from the date hereof of their employment of him, the said Pruden, for such purpose, then this option shall be and become null and void.

"The purchase when consummated shall be closed at Manteo, North Carolina. It is agreed that the parties of the second part shall give notice by telegram to R. E. Johnston of Greenville, South Carolina, and to G. S. VanGorder of Buffalo, New York, at least five days prior to the date when they will be ready to close the said purchase, of their election to close the said purchase at that time.

"It is understood and agreed that the said conveyance to the parties of the second part shall be by general warranty deed, subject only to the said mortgage of $120,000 above described."

Mr. Pruden was employed to examine the title, and on 15 June, 1905, the said Heimick and Alworth sent to R. E. Johnston, at Greenville, S. C., and to G. S. VanGorder, at Buffalo, N. Y., the following telegram:

"We elect to exercise the option heretofore granted by the East Lake Lumber Company to M. H. Alworth and F. W.

Heimick, dated 20 May, 1905, and purchase the property described in said option for the sum of $220,000, under the terms of payment stated therein, provided you can give us a clear and undisputed title to the whole of the 167,550 acres of land and timber in Dare County, heretofore represented by you to us to be owned by the East Lake Lumber Company."

F. W. Heimick was examined as a witness, and among other things testified as follows: That when he sent the telegram to VanGorder he was staying at the Atlantic Hotel in Norfolk. That he did not stay more than about a day after sending the telegram before he left for home. That the only notice he gave of acceptance was by this telegram. That he never furnished any copy of the estimate made by the timber estimators. That he expected a reply by wire or letter. That he received no reply to his telegram. That he went back to his home in Duluth. That ended the matter until the plaintiffs started this suit. That he did not receive any letter from Johnston or VanGorder replying to the telegram sent. Had no conversation with them afterwards. That he got from Mr. Pruden an unsatisfactory report of the title. That Mr. Pruden said there was a great deal of litigation over it, but he thought it could be ultimately cleaned up; and witness told him he was not buying a lawsuit.

This is the only reference in the evidence to the result of the investigation of the title.

The plaintiffs also offered evidence that Heimick was worth $250,000, O'Brien $6,000,000, and Alworth $20,000,000.

The plaintiffs also offered evidence that the defendant verbally represented the title to said land to be good, and that in consequence thereof they made the same representation to O'Brien, Alworth, and Heimick, who, after the execution of said option of 23 January, 1905, went on said lands with a large number of employees, spent several weeks examining said land and the timber thereon, and incurred much expense therefor, which the plaintiffs claimed amounted to $9,752, and which they offered to prove they had paid.

The examination of the property was completed between 15 April, 1905, and 1 May, 1905.

No evidence was offered as to the number employed to examine the lands or as to the value of the services.

Nothing was done between the parties after the telegram of 15 June, and there was evidence that the title to large parts of the land was defective.

At the conclusion of the evidence there was judgment of non-suit, and the plaintiffs excepted and appealed.

*E. F. Aydlett and J. C. B. Ehringhaus for plaintiffs.*
*Pruden & Pruden, Ward & Grimes, and W. M. Bond for defendant.*

ALLEN, J. The two causes of action set out in the complaint are inconsistent, and both cannot be true.

In the first, the plaintiffs seek to recover commissions because they contend they found a purchaser for the land of the defendant, who was ready and able to pay the purchase price, and so notified the defendant, who refused to convey; and in the second, to recover damages because the defendant represented the title to the land to be good; that they relied on these representations and found a purchaser for the land, who, after examination, refused to buy because the title was defective.

We will, however, consider the causes of action separately.

The right of the plaintiffs to recover commissions is dependent upon proof that they had found a purchaser for the land, ready, able, and willing to buy, upon the terms contained in the paper of 24 May, 1905, and that notice of this fact was given to the defendant.

The defendant had the right to prescribe the terms of sale, and is not liable for commissions unless those imposed were complied with; and, on the other hand, the plaintiffs cannot be deprived of compensation because of failure by the defendant to convey, if they found a purchaser who notified the defendant of his readiness and ability to comply with the option. *Martin v. Holly,* 104 N. C., 38; *Mallonee v. Young,* 119 N. C., 552; *Trust Co. v. Adams,* 145 N. C., 166.

In the last cited case *Justice Walker,* speaking for the Court, says: "It is now the established doctrine of the courts that, in the absence of any usage or contract, express or implied, to the contrary, or conduct of the seller preventing a completion of the bargain by the broker, an action by the latter for his com-

CLARK *v.* LUMBER CO.

missions will not lie until it is shown that he has procured and effected a sale of the property upon the terms fixed by the vendor. It is not enough that the broker has devoted his time, labor, or money to advance the interests of his employer. Unsuccessful efforts, however meritorious, afford no ground of action. Where his acts bring about no agreement or contract between his employer and the purchaser, by reason of his failure in the premises, the loss of expended and unremunerated effort must be all his own. He loses the labor and skill used by him which he staked upon success. If there has been no contract, and the seller is not in default, then there can be no reward. His commissions are based upon the contract of sale."

We must then inquire into the terms of the contract of 24 May, 1905, and see what was required of the purchaser before the defendant was under any legal obligation to convey.

The contract of 24 May is an option, which is a right acquired by contract to accept or reject a present offer to sell (*Trogden v. Williams,* 144 N. C., 199), and is no more than a proposition to sell until accepted (*Hardy v. Ward,* 150 N. C., 391), and the acceptance must be identical with the offer to be effective (*Gregory v. Bullock,* 120 N. C., 262; *Tanning Co. v. Telegraph Co.,* 143 N. C., 378; *Green v. Grocery Co.,* 153 N. C., 412).

In *Tanning Co. v. Telegraph Co., supra,* it was held that an acceptance for 1,500 barrels of oil was not good when the offer was to sell *about* 1,500 barrels, and in *Green v. Grocery Co., supra,* it is said, quoting from the Supreme Court of the United States: "It is an undeniable principle of the law of contracts that an offer of a bargain by one person to another imposes no obligation upon the former until it is accepted by the latter, according to the terms in which the offer was made. Any qualification of or departure from those terms invalidates the offer, unless the same be agreed to by the person who made it."

Applying these principles to the evidence, we are of opinion that there has been no acceptance of the offer to sell on the terms contained in the option, and that the plaintiffs are not entitled to recover commissions.

(1) The offer is to sell 167,555 acres, more or less; the acceptance is to buy the whole of 167,555 acres.

(2) The offer is to sell and to execute a deed with general warranty; the acceptance is to buy, provided a clear and *undisputed* title can be made for the whole.

(3) The offer provides that the purchase, when consummated, shall be closed at Manteo, and the purchasers shall give notice to the defendant at least five days prior to the date, when they will be ready to close said purchase, of their election to do so at that time; and such notice was not given.

We do not hold that there must be an acceptance in the exact language of the offer, but must recognize the right of parties to impose the terms upon which they will enter into a contract of sale, and in our opinion the acceptance of 15 June differed materially from the offer of 24 May.

If the defendant had acted upon the acceptance, and had tendered a deed to the purchaser, he might refuse to pay the purchase money, because of a discrepancy in the acreage, as his acceptance was for the whole, or if the title to the whole was good, he could still decline to pay because of a dispute.

There is a vast difference between a good title and one that is undisputed, and the purchaser had a clear conception of this, as shown by his statement to his attorney that he was not buying a lawsuit, when told by him that the title was in litigation, but he thought it could be cleared up.

The notice was also material, and contemplated that the purchaser should fix a date at Manteo, not less than five days from the time of the notice, when the parties could meet and consummate the sale, which was not done.

There is no evidence that the purchasers went to Manteo after 15 June, and one of them testified that he remained in Norfolk one day after sending the telegram, and then went to his home in Minnesota and heard no more of the matter until this action was instituted.

The objections to the maintenance of the second cause of action are equally fatal:

(1) The complaint alleges the execution of the contract of 24 May, 1905, and that the damages sought to be recovered were on account of expenses incurred pursuant thereto, while the evidence of the plaintiff is that they finished the work causing the expense by 1 May, before the contract was made.

(2) The cause of action is based upon a false representation as to title, and in any event it was necessary to prove that the representation was relied on. The contract and the evidence offered by the plaintiffs show conclusively that this could not be so.

The contract gives time to the prospective purchasers for an examination of the titles, and requires them to employ a competent attorney and commence an examination of the title of all of said property without delay, and one of the purchasers testified that the report of the attorney was unsatisfactory, and that he told him he was not buying a lawsuit.

(3) No evidence was offered to show the amount of work done or the value thereof.

(4) No connection is shown between the representation alleged to have been made by the defendant and the damages claimed.

Upon the whole record, we find no error.

Affirmed.