WM. MUIRHEAD CONSTRUCTION COMPANY, INC. v. HOUSING AUTHORITY OF THE CITY OF DURHAM, NORTH CAROLINA, AND NATIONAL SURETY CORPORATION.

(Filed 24 April 1968.)

**1. Trial § 56—**

In a trial before the judge without a jury, the ordinary rules as to the competency of evidence which are applicable in a jury trial are to some extent relaxed, since the judge with knowledge of the law is able to eliminate incompetent and immaterial testimony, but if incompetent evidence is admitted, the presumption arises that it was disregarded and did not influence the judge's findings.

**2. Principal and Surety § 8—**

The evidence in this case *is held* sufficient to withstand motion for non-suit and to support the trial court's findings and conclusions of law in plaintiff's action to cancel a bid bond posted on a bid for a general construction contract of public housing apartments and to enjoin the forfeiture or enforcement thereof.

**3. Contracts § 2—**

An essential element of every contract is mutuality of agreement; the parties thereto must assent to the same thing in the same sense, and their minds must meet as to all the terms, and if any portion of the proposed terms is not settled or no mode agreed upon by which it may be settled, there is no agreement.

**4. Contracts § 3—**

Unless an agreement to make a future contract is definite and certain upon the subjects to be embraced therein, it is nugatory; consequently, the acceptance of a proposition to make a contract, the terms of which are to be subsequently fixed, does not constitute a binding agreement.

**5. Contracts § 12—**

The heart of a contract is the intention of the parties.

**6. Same—**

Ambiguity in a written contract is to be inclined against the party who prepared the writing.

APPEAL by defendant Housing Authority from *Bailey, J.,* 16 October 1967 Civil Session of DURUAM Superior Court.

This is a civil action to cancel and return plaintiff's bid bond posted on a bid for the general construction contract of housing apartments and to enjoin the forfeiture or enforcement thereof.

It was stipulated in the Court below that the plaintiff, Wm. Muirhead Construction Company, Inc., is a corporation organized and engaged in the business of general construction in the State of North Carolina; that the defendant Housing Authority of the City of Durham, North Carolina, was duly incorporated and acting pursuant to Chapter 157 of the "Housing Authorities Law" of North Carolina. It was further stipulated that the National Surety Corporation is a New York corporation duly qualified to carry on a surety and bond insurance business in this State.

Jury trial was waived by all parties. Plaintiff and defendants offered evidence, both oral and documentary. The trial judge made detailed findings of fact and conclusions of law.

The facts as found by Judge Bailey are summarized as follows:

(1) Defendant Housing Authority issued invitations for bids for Housing Project NC-13-7 to be located in the City of Durham

and to be comprised of 82 dwelling buildings containing 200 family dwelling units, together with a management and maintenance building. Separate bids were invited for the general construction and the bids were to be received and opened on 30 November 1965. As a part of the invitation for bids, there was submitted to proposed bidders certain instructions for bidders and forms of bid, bid bond and contract, and form of performance and payment bond; also certain general conditions, special conditions, unit price agreements, technical specifications and drawings and addenda, all prepared by defendant Housing Authority or under its direction or by architects and engineers selected by it.

(2)   On 30 November 1965, plaintiff submitted a bid. The bids were opened and it was determined that the bid submitted by plaintiff at a price of $2,337,000 was lowest and was $277,786 below the next lowest bid. Two other bids were slightly higher than the second lowest.

(3)   Plaintiff submitted its bid to defendant Housing Authority on the prescribed bid form and also deposited a bid bond executed by plaintiff, as principal, and defendant Surety Corporation, as surety, on the prescribed form. The penal sum of said bond is $116,850, representing five per cent of plaintiff's bid.

(4)   The instructions to bidders, Section 12, which is a part of the specifications, contained the following language: "12(a). Subsequent to bid opening, *and prior to and as a condition of award* (emphasis as in original), the successful bidder shall negotiate with the local authority and agree upon mutually acceptable unit prices for the items listed in Section 8 of the special conditions and conforming to the terms thereof." Section 8 of the Special Conditions contains nineteen separate items.

(5)   "Off-site Borrow" in the general contracting business is a term meaning earth or similar material obtained from a place other than the construction site and used to raise the elevation of the construction site. The specifications do not mention the need for off-site borrow in connection with Project NC-13-7.

(6)   Section 3(a) of the general conditions of the specifications, which form a part of the contract, provides, in part, as follows: "Except as otherwise specifically stated in the contract, the contractor shall provide and pay for all materials, labor, tools, equipment, water . . . and all other services and facilities of every nature whatsoever necessary to execute the work to be done under the contract. . . ."

(7)   Division I of the specifications contains a large number of

specific items relating to excavation, filling and grading for Project NC-13-7. Item 13 thereof requires the contractor to remove from the site and dispose of all debris and *excess* excavated material. (Emphasis supplied.) Nowhere in said division does it appear specifically that off-site borrow would be required.

(8)   From a technical analysis of the drawings it could be determined that between 40,000 and 60,000 cubic yards of off-site borrow would be required. The engineers who prepared the drawing for the grading of this area made such a determination and advised the architect of this fact prior to the time invitations to bid were submitted to prospective bidders. The architect and the engineer were responsible for preparation of the specifications and Division I was the particular responsibility of the engineer.

(9)   When the plaintiff's bid was prepared and submitted, the plaintiff did not consider that off-site borrow would be required.

(10)   The plaintiff raised the question of off-site borrow and of rock excavation at the first meeting of the plaintiff and defendant Housing Authority in Atlanta, Georgia, on the morning of 7 December 1965. At this time, the representative of the defendant Housing Authority refused to agree that rock excavation or off-site borrow were elements to be negotiated on a unit price basis. Subsequently, the defendant Housing Authority receded from its position as to rock excavation. It never receded as to off-site borrow. Plaintiff never agreed to furnish off-site borrow within his lump-sum bid price.

(11)   On 9 December 1965, defendant Housing Authority submitted a contract to plaintiff with a request that it be executed within ten days. At this time, no unit price agreement had been reached between the plaintiff and defendant Housing Authority. On 20 December 1965, defendant Housing Authority, by letter, called upon plaintiff to negotiate a unit price agreement without delay.

(12)   On 22 December 1965, plaintiff, by letter, communicated its willingness to negotiate a unit price agreement to include rock excavation and off-site borrow. This letter was acknowledged by defendant Housing Authority by letter dated 22 December 1965 and proposed a meeting for this purpose to be held on the next day.

(13)   By letter dated 24 December 1965, plaintiff submitted to defendant Housing Authority a proposed unit price agreement. This proposal set forth the agreements reached on the previous day and, in addition, included an off-site borrow unit price which defendant Housing Authority had not agreed to. The proposal did not include all of the items for which a unit price agreement was required as a condition precedent to the award of the contract.

CONSTRUCTION CO. *v.* HOUSING AUTHORITY.

(14)  On 30 December 1965, defendant Housing Authority replied to the above letter but declined to include a unit price for off-site borrow. It did, however, offer to provide a unit price for off-site borrow in the event "mulch or other unsuitable material' was encountered on the site. No agreement as to all unit prices had at this time been reached.

(15)  By letter dated 31 December 1965, thirty-one days after the bids were opened, plaintiff withdrew its bid proposal.

The invitation for bids provided that "no bid shall be withdrawn for a period of thirty days subsequent to the opening of bids."

Pending the litigation, plaintiff deposited with the Clerk of the Superior Court of Durham County a certificate of deposit issued by Wachovia Bank and Trust Company, of Durham, North Carolina, in the principal sum of $116,850, bearing interest at the rate of five per cent per annum, as security for any obligations under the bid bond and for delivery to the defendant Housing Authority or return to the plaintiff as the court might adjudge.

Judge Bailey concluded that the bid documents were ambiguous and unclear as to the question of off-site borrow, that plaintiff attempted in good faith to reach a unit price agreement but was unable to do so, that no complete unit price agreement was ever reached, that no contract conforming to plaintiff's bid proposal was submitted to plaintiff, that more than thirty days elapsed after the opening of the bids before plaintiff withdrew its bid proposal, that no meeting of the minds of the parties ever occurred, that plaintiff is not indebted to defendant Housing Authority or to defendant Surety Corporation, and defendant Surety Corporation is not indebted to defendant Housing Authority.

From judgment ordering and adjudging that the bid bond be rescinded, that defendant Housing Authority recover nothing of plaintiff or defendant Surety Corporation, that defendant Surety Corporation recover nothing of plaintiff, that the Clerk of the Superior Court return to plaintiff the certificate of deposit together with all interest paid thereon and not delivered to defendant Housing Authority, that defendant Housing Authority deliver to plaintiff all interest received on said certificate of deposit, that defendant Housing Authority be permanently enjoined from enforcing or attempting to enforce the bid bond posted by plaintiff and return the same to plaintiff, and that defendant Housing Authority pay the costs of this action, defendant Housing Authority appealed.

*Edwards & Manson by Daniel K. Edwards, attorneys for defendant appellant Housing Authority.*

*Kennon & Kennon and Robert D. Holleman, attorneys for plaintiff appellee.*

BRITT, J. Several of appellant's assignments of error relate to the admission of evidence by the trial judge, sitting as judge and jury.

In a trial before the judge, sitting without a jury, the ordinary rules as to the competency of evidence applied in a trial before a jury are to some extent relaxed, for the reason that the judge with knowledge of the law is able to eliminate from the testimony he hears that which is immaterial and incompetent and consider that only which tends properly to prove the facts to be found. Stansbury, N. C. Evidence 2d, § 4a; *Construction Co. v. Crain and Denbo, Inc.,* 256 N.C. 110, 123 S.E. 2d 590. There is a presumption that if incompetent evidence was admitted, it was disregarded and did not influence the judge's findings. Stansbury, N. C. Evidence 2d, § 4A; *Bank v. Wilder,* 255 N.C. 114, 120 S.E. 2d 404. For the most part, the testimony complained of were mere summarizations of portions of the documents properly introduced in evidence. We find no prejudicial error in the admission of the testimony complained of.

In its brief, appellant asserts that aside from procedural matters, the issue might be stated as being whether the plaintiff was right in renouncing its bid because the defendant Housing Authority did not agree with plaintiff that unit price for "borrow" should be included in the pre-negotiated unit prices. Although this may be an oversimplification of the issue, it approaches the heart of the controversy.

Appellant assigns as error the refusal of the trial judge to grant its motion for nonsuit at the close of plaintiff's evidence and renewed at the close of all the evidence. We hold that the evidence was sufficient to withstand the motion for nonsuit and this assignment of error is overruled.

Appellant's remaining assignments of error relate to the findings of fact, conclusions of law and judgment entered by Judge Bailey. We will consider these assignments as a whole.

The trial court concluded that the bid documents prepared by appellant or under its direction were ambiguous and unclear as to the question of off-site borrow and that no meeting of the minds of the contracting parties, plaintiff and defendant Housing Authority, ever occurred. The evidence in the record justifies this conclusion.

One of the essential elements of every contract is mutuality of agreement. There must be neither doubt nor difference between the parties. They must assent to the same thing in the same sense, and

their minds must meet as to all the terms. If any portion of the proposed terms is not settled, or no mode agreed on by which they may be settled, there is no agreement. *Croom v. Lumber Co.*, 182 N.C. 217, 108 S.E. 735; 13 C.J. 264. Unless an agreement to make a future contract is definite and certain upon the subjects to be embraced therein, it is nugatory. Consequently, the acceptance of a proposition to make a contract, the terms of which are to be subsequently fixed, does not constitute a binding obligation. *Croom v. Lumber Co., supra.*

Defendant Housing Authority contends that G.S. 143-129 is explicit that once the award is made there is a binding contract. In the case before us, the contract itself altered the effect of this statute. The trial court found that the contract documents prepared by defendant Housing Authority went beyond the requirements of the statute and imposed additional conditions of award.

An offer to enter into a contract in the future must, to be binding, specify all of the essential and material terms and leave nothing to be agreed upon as a result of future negotiations. *Young v. Sweet*, 266 N.C. 623, 146 S.E. 2d 669. There must be no lack of identity between offer and acceptance, and the parties must appear to have assented to the same thing in the same sense. *Richardson v. Storage Co.*, 223 N.C. 344, 26 S.E. 2d 897. The trial court found that no unit price for off-site borrow nor for several of the listed unit price items were agreed upon, therefore, defendant Housing Authority attempted to accept the offer on terms different from those submitted by the plaintiff.

The heart of a contract is the intention of the parties. In construing contracts, it is a well-established rule that an ambiguity in a written contract is to be inclined against the party who prepared the writing. *Realty Co. v. Batson*, 256 N.C. 298, 123 S.E. 2d 744, and cases cited therein.

The trial court determined that the terms of the contract documents are ambiguous. It found that the minds of the parties never met on a material point. This was vital to the consummation of a contract and failure of the minds to meet resulted in no contract. Here the contract documents, including plans and voluminous specifications, were prepared by the defendant Housing Authority or its agents. Any ambiguities found therein must be resolved against it. *Coulter v. Finance Co.*, 266 N.C. 214, 146 S.E. 2d 97.

The trial in the Superior Court was without prejudicial error and the judgment of Judge Bailey is

Affirmed.

MALLARD, C.J., and BROCK, J., concur.