D. M. WRIGHT BUILDERS, INC. v. DORA DORRITY BRIDGERS

No. 6814SC314

(Filed 23 October 1968)

1. **Vendor and Purchaser § 2— construction of option**
    An option, being unilateral in its inception, is construed strictly in favor of the maker.

2. **Vendor and Purchaser § 2— acceptance of option**
    Acceptance of an option must be according to the terms of the option.

3. **Vendor and Purchaser § 2— acceptance of option — tender of a counter offer**
    Where a purported option gives the optionee the right to purchase from the owner "lot No. 2 containing 23 and 6/10 acres" at a price of $600 per acre payable in three annual installments, with no provision in the option for the surveying and platting of the lot, the tender by the optionee of an agreement to purchase the land in tracts of eight acres per year for

three years, with the owner to bear expense for the surveying and platting of the property, is ineffectual as an acceptance of the terms of the option.

**4. Vendor and Purchaser § 2— unenforceable option**
Purported option *is held* void and unenforceable for uncertainty.

**5. Contracts § 2— mutuality of agreement**
An essential element of every contract is mutuality of agreement.

**6. Contracts § 12— construction of ambiguous writing**
Ambiguity in a written contract must be resolved against the party who prepared it.

APPEAL by defendant from *Hall, J.,* at the 15 April 1968 Civil Session of DURHAM Superior Court.

Plaintiff filed its complaint 2 December 1965, alleging that on 27 April 1959 defendant granted plaintiff an option in words and form as follows:

"THIS AGREEMENT, made and entered into this the 27th day of April 1959, by and between Dora D. Bridgers, widow, of Durham County, North Carolina, party of the first part, and D. M. Wright Builders, Inc., a North Carolina Corporation, party of the second part.

That lot No. 2 containing 23 and 6/10 acres as shown on map of property of the Dorrity Estate as subdivided July 20, 1916 by E. C. Belvin, Surveyor, is in a separate agreement from the attached agreement which will be entered into October 15, 1959 or at the time of the final agreement between D. M. Wright Builders, Inc. of Durham, North Carolina and Dora D. Bridgers party of the Dorrity Estate. This separate agreement is that the above mention lot No. 2 containing 23 and 6/10 acres will be sold to D. M. Wright Builders, Inc. at $600.00 per acre, with payment number one on October 15, 1960, second payment October 15, 1961 and third and final payment October 15, 1962.
In the event this option is exercised the $200.00 paid for this option will be credited upon the first payment of the above mentioned property.

It is understood that the party of the second part intends to develop said property and build dwelling houses thereon for sale, and that upon the execution of this option it will begin immediately to attempt to secure Federal Housing Administration approval of said property for F. H. A. financing; in the event F. H. A. approval is secured and the party of the second part does not exercise this option the $200.00 paid for said option

shall be forfeited and retained by the party of the first part; if, however, the F. H. A. does not approve said property for F. H. A. financing, said $200.00 shall be returned to the party of the second part.

In the event this option is exercised, the parties hereto agree to enter into a contract of sale to carry out the terms, provisions, conditions, and intent expressed in this option.

The party of the first part agree, if said option is exercised, to release said property to the party of the second part, its successors or assigns, by warrenty [sic] deed conveying a good and marketable fee simple title to the property so released, upon payment of the purchase price as herein set out.

This option and all rights hereunder may be assigned by either the party of the first part or the party of the second part, and if assigned by the party of the second part, any and all acts to be performed by it under this option or the contract to be entered into pursuant hereto, may be performed by such assigns, whether such assignment be made before or after the exercise of this option.

In WITNESS, WHEREOF, I have hereunto set my hands and seals, this the day and year first above written.

s/ DORA D. BRIDGERS (SEAL) ....... ......... .. ............. .................. (SEAL)"

Plaintiff further alleged that on or before 15 October 1959 and on several occasions thereafter, plaintiff attempted to exercise the option by asking defendant to execute a contract of sale which it tendered to defendant. Plaintiff also alleged its present willingness to perform and the continued refusal of the defendant, and prayed for specific performance.

Defendant answered 31 January 1966, admitting the granting of an option, under seal, but denying that plaintiff ever exercised the option within its terms, contending that any efforts to that end amounted only to counter offers.

The case was submitted to the jury on the following agreed issue: "Did the plaintiff unconditionally exercise the option referred to in the complaint on or before October 15, 1959?" From an affirmative answer by the jury and judgment for plaintiff thereon, defendant appealed.

*Nye & Mitchell for plaintiff appellee.*
*Arthur Vann for defendant appellant.*

BRITT, J.

Defendant assigns as error the refusal of the trial court to allow her motion for judgment as of nonsuit interposed at the conclusion of plaintiff's evidence and renewed at the conclusion of all the evidence. The assignment of error is well taken.

Although the parties refer to the paper writing signed by defendant and dated 27 April 1959 as an option, it is doubtful that the document deserves the connotation.

Even if the document is considered an option, the terms are so indefinite as to render its construction impossible. Since both parties — in their pleadings, testimony in the trial court, and briefs and arguments in this Court — consider 15 October 1959 as the operational date, we will consider the document from that standpoint.

[1, 2]   An option, being unilateral in its inception, is construed strictly in favor of the maker. *Ferguson v. Phillips,* 268 N.C. 353, 150 S.E. 2d 518. Acceptance of an option must be according to the terms of the option. 2 Strong, N. C. Index 2d, Contracts, § 2; *Winders v. Kenan,* 161 N.C. 628, 77 S.E. 687; *Clark v. Lumber Co.,* 158 N.C. 139, 73 S.E. 793.

[3]   The document seems to contemplate that if the plaintiff exercises its option, the parties on 15 October 1959 would enter into a contract of purchase and sale "to carry out the terms, provisions, conditions, and intent expressed in this option." The document refers to one parcel of land, lot No. 2 containing 23.6 acres as shown on a map of the Dorrity Estate. It also provides for $600.00 per acre, "with payment number one on October 15, 1960, second payment October 15, 1961 and third and final payment October 15, 1962." Nothing in the document provides for a division of the 23.6 acres in any manner and particularly into three tracts.

Plaintiff's evidence tended to show that on 5 October 1959, D. M. Wright presented to defendant for her signature an agreement which plaintiff had caused to be prepared. Paragraph numbered 1 was as follows:

"1.   The purchase price to be paid for said property is $600.00 per acre, in lots or tracts not less than 23 acres, the party of the second part to purchase and pay for all of said property within a three year period, said property to be purchased in lots or tracts of not less than 8 acres per year for the first two years and the balance remaining during the three years. The first purchase of not less than 8 acres is $600.00 per acre to be

complete on October 15, 1960, the second purchase by October 15, 1961, and the third and final purchase by October 15, 1962."

Defendant refused to sign the tendered agreement, stating that it did not comply with her agreement of 27 April 1959.

Plaintiff's evidence then showed that on 14 or 15 October 1959, D. M. Wright presented to defendant for her signature another proposed agreement which plaintiff had caused to be prepared. Paragraphs numbered 1 and 2 of that instrument were as follows:

"(1) The party of the second part agrees to purchase on or before October 15, 1960 7.87 acres and will pay the sum of $4,722.00 upon delivery of a proper deed conveying a good and marketable fee simple title to said property, free of encumbrances, the sum of $200.00 which has been heretofore paid by the party of the second part for the option referred to is to be credited against said payment of $4,722.00, making the cash payment due on said October 15, 1960, the sum of $4,522.00; the party of the second part further agrees to purchase an additional 7.87 acres on or before October 15, 1961 and to pay therefor the sum of $4,722.00; the remaining 7.86 acres is to be purchased by the party of the second part on or before October 15, 1962, and to pay therefor the sum of $4,716.00.

(2) In the event the party of the second part desires to purchase said property upon the terms set out in paragraph 1 above, shall give to the party of the first part a 30 days notice, and a survey and plat indicating the acreage desired is to be furnished by the party of the second part, whereupon the party of the first part will have a deed prepared in accordance with said plat and survey; that the expenses of surveying and plating [sic] the outside boundaries of said tract of acreage desired to be purchased is to be borne by the party of the first part, but the party of the second part shall make arrangements for same and see that said plat and survey shall comply with the rules and regulations of all public authorities, and that the same is ready for recordation."

Plaintiff's evidence disclosed that defendant declined to sign the second proposed agreement at that time but indicated that she wanted to send it to her son in Bethesda, Maryland, for him to look over. Later on, after 15 October 1959, she advised Mr. Wright that she would not sign the agreement because it did not comply with the agreement she signed on 27 April 1959.

Assuming, *arguendo,* that the paper writing signed by defendant

was an option, the acceptance attempted by plaintiff was not according to its terms. There was no basis for plaintiff to conclude that it was entitled to purchase the land in three separate tracts. If so, what portion of the 23.6-acre tract would be conveyed in 1960, what portion in 1961, and what portion in 1962?

Paragraph 2 of the second proposed agreement provides for a survey of the property and preparation of a plat and that the expenses of surveying and platting would be borne by defendant. There is no provision in the "option" for a survey or plat or that defendant would pay any expenses in connection therewith. Clearly, the agreement proposed was not in accordance with the "option."

We hold that plaintiff's acceptance, as set forth in either of the two documents which it tendered to defendant for her signature, was not according to the terms of the paper writing dated 27 April 1959.

[4, 5]   Viewing the paper writing which defendant signed in its proper light, it was void for uncertainty. We said in *Construction Co. v. Housing Authority*, 1 N.C. App. 181, 160 S.E. 2d 542: "One of the essential elements of every contract is mutuality of agreement. There must be neither doubt nor difference between the parties. They must assent to the same thing in the same sense, and their minds must meet as to all the terms. If any portion of the proposed terms is not settled, or no mode agreed on by which they may be settled, there is no agreement. *Croom v. Lumber Co.*, 182 N.C. 217, 108 S.E. 735."

[6]   The paper writing signed by defendant was prepared by plaintiff or its agent or attorney. It contains many ambiguities. Any ambiguities found therein must be resolved against the plaintiff. *Coulter v. Finance Co.*, 266 N.C. 214, 146 S.E. 2d 97. *Construction Co. v. Housing Authority, supra.*

We hold that the paper writing dated 27 April 1959 upon which plaintiff bases its action was lacking in sufficient definiteness and clarity to render it an enforceable document.

Defendant's motion for nonsuit made at the close of plaintiff's evidence should have been granted. The judgment of the Superior Court is

Reversed.

BROCK and PARKER, JJ., concur.