HALL et al. v. GAMBRILL et al.

(Circuit Court, D. West Virginia. August 3, 1898.)

1. POWER TO SELL LAND—WHEN COUPLED WITH AN INTEREST — AGREEMENT FOR COMMISSION.

The fact that a power to sell land authorizes the agent to retain a percentage of the purchase money in payment for his services does not make it a power coupled with an interest, as the interest of the agent is only in the proceeds of the land arising from the execution of the power.

2. SAME—CONSTRUCTION OF INSTRUMENT.

An instrument by which the owner of land authorizes another to sell the same at not less than a stated price, and to retain a percentage of the proceeds in payment for his services, and which further provides that any security taken for deferred payments shall be payable to the owner, who shall execute proper conveyances on receipt of full payment, does not empower the agent to make a contract of sale, without the approval of the owner, which the latter can be compelled to execute.

3. PRINCIPAL AND AGENT—FRAUDULENT CONTRACT BY AGENT—SPECIFIC PERFORMANCE.

A court of equity will not enforce against an owner of land a contract of sale made by his agent under authority given six years before, where the land has greatly appreciated in value meantime, and the agent, without advising his principal of such fact, made the sale for a price grossly inadequate at the time, though within the terms of his original authority.

W. W. Arnett, T. F. Barrett, and R. F. Fleming, for plaintiffs.

F. P. Moats, W. G. Peterkin, and B. M. Ambler, for defendants.

JACKSON, District Judge. This is a bill filed by Cyrus Hall and Ray C. Coulter against J. H. Gambrill and Robert G. Gambrill to compel the defendant J. H. Gambrill to convey to R. C. Coulter 563½ acres of land in Ritchie county, W. Va., which Hall, as the agent of Gambrill, sold to Coulter under a power of attorney executed by J. H. Gambrill to Cyrus Hall on the 6th day of September, 1889; claiming that under the provisions of the contract he had an interest coupled with a power,—which contract reads as follows:

"This agreement, made and entered into by and between James H. Gambrill, of the county of Frederick, in the state of Maryland, of the first part, and Cyrus Hall, of the county of Kanawha, in the state of West Virginia, of the second part, this 6th day of September, in the year eighteen hundred and eighty-nine, witnesseth, that the party of the second part agrees and binds himself to sell certain tracts of land for the said party of the first part: the same being all that residue of a certain tract of land purchased by the said J. H. Gambrill at a sale made by George Loomis, special commissioner of the circuit court of Ritchie county, W. Va.; it being the same tract of land, or a part thereof, purchased by Charles Gambrill from Virginia S. Hall, administratrix of Smith C. Hall, deceased; also, 207 acres purchased by Chas. Gambrill from David McGregor, and conveyed to him by deed now of record in the clerk's office of the county court of said Ritchie. To the said deed, reference is here made. The said sales to be made for not less than five dollars ($5) per acre; the payments to be not less than one-third cash, and the deferred payments to be secured by good and sufficient liens, with notes as collateral security; the same to bear interest from the day of said sale. The said party of the second part hereby agreeing to perform all necessary work in the sale of said lands. draw all deeds of conveyances, mortgages, and notes, in legal and proper form, and for which to receive, as compensation for said services, twenty per cent. (20 per cent.), to be received of the net receipts of said sales, but the 20 per cent. to be received only as the purchase

money is collected, unless the party of the second part shall sell the lands for one-half cash. Then and in that event he is to receive his 20 per cent. commissions (that is, the whole amount) out of the one-half cash received, but does not bind himself to collect all deferred payments, if the party of the first part desires it. It is hereby agreed and understood that all mortgages, notes, and securities are to be made payable to the said James H. Gambrill, or his order, who will, when the same have been paid, and the purchase money has all been fully paid, execute, with himself and wife, good and sufficient deeds of conveyances to said lands to the purchasers of the said lands; 20 per cent. to be for all legal services heretofore rendered in defense of title to said lands, or that may be rendered. In testimony whereof, witness our hands and seals the day and date first above written."

The answer of Gambrill to the bill contests the construction of the contract as claimed by Hall, and denies his right to execute a contract as his agent without first submitting the contract to him. It also alleges that Hall conspired with Coulter to sell him this land, in which Hall, after the sale, was to have a contingent interest. It also alleges that the land was sold far below its value; that though Hall had been the agent ever since September 6, 1889, he had never succeeded in disposing of or selling the land, and that in the early part of the year 1895 oil developments suddenly sprung up in close proximity to these lands, by which the value of them was greatly enhanced, and they were sought after, and claimed to be oil territory; that Hall well knew this, and that he had made overtures to certain parties to purchase the land from him, as agent, with the understanding that the land should be purchased in the name of his son, and that there would be a bargain in it. It is claimed that all of Hall's acts in this matter are fraudulent. Cross bills were filed in this case by J. H. Gambrill and Robert Gambrill against Cyrus Hall and Ray C. Coulter to set aside the contract entered into between Hall and Coulter, and for other purposes, to which Hall and Coulter filed separate answers.

In the view the court takes of this case, it is unnecessary at this time to consider any question except the one which arises upon the construction of the contract. That question is vital, as fixing the scope of power granted to Hall by Gambrill under the power of attorney made on the 6th day of September, 1889. It does not appear that Gambrill ever signed any other paper authorizing Hall to sell the land, nor did he ever execute any contract or agreement with Coulter, through Hall, for the sale of the land to Coulter. The only agreement made with Hall was the power of attorney entered into on the 6th day of September, 1889, authorizing him to sell the land, at which time the land was in a state of wilderness, and before its value had increased. It is claimed by the plaintiffs in this action that this power of attorney executed by Gambrill to Hall conferred a power upon Hall, coupled with an interest. An inspection of the power of attorney shows that Hall was authorized to sell the land at a sum not less than $5 per acre,—one-third in cash, and deferred payments to be secured by good and sufficient liens. Hall was to perform all necessary work in the sale of the land, draw deeds of conveyance and mortgages, and to receive as a compensation 20 per cent. of the net receipts of said sales, which was to be paid him as the purchase money was collected. The notes to secure the deferred payments were to

be made payable to Gambrill, and, in the event a mortgage was taken upon the land, it also was to be made payable to him. I do not concur in the position of Hall, that by the terms of this agreement he acquired an interest, coupled with a power, which authorized him to sell this land, and to compel Gambrill, the owner, to execute the contract made by him. It is very clear to my mind that at the time the contract was entered into the object and purpose of the parties were to sell the land at any fair consideration that could be obtained for it, but under no circumstances was it to be sold for less than $5 per acre. The fact that Hall was to be paid a commission of 20 per cent. out of the proceeds arising from the sale of the land did not vest in him an interest in it. It was simply a contingent commission, which he was entitled to whenever a sale was made by him under the power of attorney; but the power of attorney, upon its face, expressly declares that the notes and securities taken in payment of the deferred installments were to be made payable to the said Gambrill, or his order,—stipulating that, when all the purchase money had been paid, the said Gambrill and his wife were to execute good and sufficient deeds of conveyance of said land to purchasers. This clause in the power of attorney clearly shows that Gambrill never intended to part with his title to the land, except upon terms satisfactory to himself. He did not, by the terms and conditions of the power of attorney, place the property in the hands of Hall, to sell upon any terms that he (Hall) should contract for, but the whole scope of the power of attorney shows that the contract must be made with Gambrill's approval before he would execute a deed. Hall could not make a deed for the land, or any portion of it, for the reason that he had nothing in the land to convey, having no interest of any kind in it. The words employed in the contract do not seem to be susceptible of any other meaning. The contract confers upon Hall a power to sell, but it does not grant an interest in the land to be sold by him. To create an interest of this character, the power must be irrevocable. By the terms of this contract, there is no actual transfer of any interest in the land. If, instead of agreeing to pay a commission in the event of a sale of the land, Gambrill had conveyed an undivided interest in the land to Hall, he would then have had an interest in it, not contingent, but actual; but he did not convey any interest in it. It was said by Judge Marshall in the case of Hunt v. Rousmanier's Adm'r, 8 Wheat. 174, that:

"The power must be ingrafted on an estate in the thing. * * * 'A power coupled with an interest' is a power which accompanies, or is connected with, an interest. The power and the interest are united in the same person. But, if we are to understand by the word 'interest' an interest in that which is to be produced by the exercise of the power, then they are never united. * * * The power ceases when the interest commences, and therefore cannot, in accurate law language, said to be coupled with it."

Such is undoubtedly the law. Applying the principle as stated by Chief Justice Marshall,—the power ceases when the interest commences, and therefore cannot be coupled with it,—can it be said that Hall had any interest in the contract until he exercised the power to sell? Clearly, he had no interest that would accrue to him until after the sale was made. His commissions were the only interest he had,

under the contract, and the same were contingent upon a sale. There was, under the power of attorney, no actual transfer of any interest in the land by Gambrill to Hall. He was a mere agent of Gambrill to negotiate a sale, subject to the approval of Gambrill; and, when the sale was negotiated and approved, then he was entitled to his commission for making the sale, and not before. A failure to sell before a revocation of the power would terminate all interest he had under the contract, which clearly shows that his interest was contingent on being able to sell the land, and was in no sense an interest running with the land.

Other questions which arise under this contract might be referred to,—more particularly as to whether or not the power of attorney from Gambrill during the six years subsequent to September, 1889, had not been revoked before the pretended contract made by Hall with Coulter was executed. As to that question, it is unnecessary to express an opinion. It, however, appears to me that the equities of the case are clearly with Gambrill. Hall has this property, under the power of attorney, from 1889 to 1895, before he succeeded in making any negotiations for the sale of it. He was paid from time to time sums of money amounting to nearly $200 for his attention to the property. In the early part of the winter of 1895 it became apparent, by the development of the oil fields, that this land was likely to be valuable oil property. It was then, for the first time during the six years that he had authority to sell the land, that he succeeded in entering into any negotiations for the sale of it. He never informed his principal as to the condition of the country, and the enhancement of the value of the land, and the proximity of it to the oil fields; and he negotiated a sale of the land, as appears from the evidence, at a price far below its value. His agency commenced about six years before the land was sold, and, after the land had greatly increased in value, Hall undertook to sell it, without ever informing his principal of the increased value of it. A court of equity will not lend its aid to enforce the execution of a contract which is unjust, or deprives either party of his just rights. At the time Gambrill authorized Hall to sell this land, and fixed the minimum price at $5 per acre, it was in a forest condition; but six years afterwards the land had increased in value to nearly $100 per acre, and it then became the plain duty of Hall to notify his principal of the increase in value of the land, before he attempted to sell it, and, if he failed to do this, it would be an utter disregard of his duty. In the case of Proudfoot v. Wightman, 78 Ill. 553, it was held, upon a bill to enforce the specific performance of an alleged contract for the sale of some lots in Cook county, Ill., that where a party had been authorized in 1865 to sell the premises at $150 per acre, and in 1868 the land had increased to the value of $500 per acre, it was the plain duty of the agent to notify his principal of the increased value of the land, before attempting to sell, and if this duty was disregarded, and an attempt made to sacrifice the property, it would be a fraud upon the rights of the principal, which a court of equity could not tolerate. The case cited is almost parallel with the case at bar, and would seem to be conclusive of the questions at issue arising upon the contract in this case. For the reasons as-

signed, I am of opinion that the bill in this case should be dismissed, with costs, and that the relief prayed for in the cross bill should be granted.