## RALEIGH REAL ESTATE AND TRUST COMPANY v. M. J. ADAMS and J. F. CUTHRELL.

(Filed 10 October, 1907).

**1. Principal and Agent—Broker—Employment at Will—Termination.**

When there is no definite time fixed for the employment to sell land upon a commission, either party has a right to terminate the agreement at will, subject to the requirement of good faith under the agreement and a sale made in pursuance of its terms.

**2. Same—Employment at Will—Contract—Terms—Commissions.**

When a real estate broker undertakes to sell the land of his principal under the agreement that such sale should be for cash, to entitle him to his stipulated compensation he must find a purchaser able, ready and willing to complete the purchase upon the specified terms before the principal elects to terminate the agreement, no specified time having been provided therein.

**3. Same—Good Faith.**

When a real estate agent or broker who undertakes to sell the land of his principal for cash, the time therefor not being fixed, has found a purchaser able, ready and willing to comply with the terms of instruction to sell, it is the duty of the agent or broker to report such facts to his principal and act in good faith with respect to his agency. Therefore, when the broker or agent endeavors to get better terms of payment from his principal, fails to do so, and the land is withdrawn from sale, he is not afterwards entitled to insist upon the sale, or to have his commissions, upon subsequently informing the principal that the sale was effected in accordance with the terms of his instructions.

CIVIL ACTION, tried before *Jones, J.,* and a jury, at April Term, 1907, of the Superior Court of WAKE County.

This action was brought by the plaintiff to recover the sum of $250, alleged to be due by the defendants, as commissions for the sale of two lots in the city of Raleigh. The plaintiff's version of the facts was, that the property was placed with it for sale by the defendants at five per cent. commissions for services rendered in making the sale; that it sold the lots to Mr. Corpening and Mr. Tennille for $5,000, the price named by the defendants as vendors. Mr. Ellington, who conducted the transaction for the plaintiff, went to the house of the

defendant Adams on December 1, 1905, to take his acknowl-
edgment and his wife's privy examination to the deed for the
lots, telling him at the time that he had sold the property for
$1,000 in cash and the balance on time, and, if the defend-
ants did not want to take the $1,000 and give time on the
balance, he could raise the cash for the whole amount.   The
defendants declined to sell the property on those terms.   Mr.
Ellington testified that he had made an arrangement with the
Raleigh Savings Bank to get the balance of $4,000.   He de-
manded the commissions for making the sale on December 2d,
and the defendants refused to pay the same.   The defend-
ants' testimony tended to show, on the contrary, that they had
placed the lots for sale in the hands of several real estate
dealers, with the understanding that the one who first sold
them, according to the stipulated terms—that is, $5,000 in
cash—should be preferred and receive the commissions; that
Ellington had met Adams on the street and stated to him
that he held the lots at too high a price.   He afterwards—on
or about Thanksgiving Day, 1905—told the defendants that
he had a proposition to make to them, and that he would pay
$1,000 down and the balance in one and two years, to which
the defendants replied that they would not accept it; that
the sale must be for cash, as before agreed upon; that they did
not care to sell on time, and had decided to take the property
off the market.   Ellington did not say that he could give the
cash, but merely made a proposal to buy, as above indicated.
There was but the one offer of part in cash and the balance
on time.   The defendants, when this offer was made by
Ellington and refused by them, withdrew the property from
the market.   There was other evidence, and facts bearing
more or less upon the controversy, but the foregoing is a suffi-
cient statement to present the point decided in this Court.
No question was made about the actual ability of Corpening
and Tennille to pay the $5,000.

The issues submitted to the jury, and the answers thereto,

were as follows: "1. Did the defendants withdraw the property from sale in good faith before the plaintiff found a purchaser, ready, willing and able to pay (for the property)?" Ans. "Yes." "2. In what amount, if any, are the defendants indebted to the plaintiff?" (Not answered, as the response to the first issue disposed of the case).

The plaintiff requested the Court to instruct the jury as follows: "If they found from the evidence that the plaintiff procured a purchaser, able, ready and willing to pay $5,000 in cash, before they withdrew the property from sale, they should answer the first issue "No," although the plaintiff did not tell the defendants that the purchaser would pay cash." This instruction was refused and exception taken.

The Court then charged the jury as follows: "The burden of proof, upon the issue submitted, is on the defendants. Among other things, the jury are instructed that, if they find from the evidence that Mr. Ellington, the plaintiff's agent, as claimed by him, told the defendants, at the interview between them, that he had found a purchaser who desired to pay $1,000 cash and the balance on time, but if it was not satisfactory he would raise all the purchase price in cash and pay the same, and the defendants then declined to sell, and withdrew the property from sale, then the jury will answer the first issue 'No.' But, if you find from the evidence that the defendants went to the office of the plaintiff, as they were requested to do, and Mr. Ellington told them he had a proposition to make them, which was that they take $1,000 cash for the property and the balance, $4,000, in one and two years, and he did not tell the defendants that they could get the purchase price, $5,000, cash, at the time, and they withdrew the property from sale in good faith, and Ellington did not tell them they could get the cash for the property until the next day, or afterwards, as testified to by them, then the jury will answer the first issue 'Yes.'" The plaintiff duly

excepted to the charge, and now assigns as error the refusal to give its special prayer, and the two instructions given by the Court.

There was judgment upon the verdict for the defendant, and the plaintiff appealed.

*Womack, Hayes & Pace* for plaintiff.
*W. N. Jones* and *W. H. Lyon, Jr.,* for defendant.

WALKER, J., after stating the case: The defendants, having specified no definite time for the duration of the plaintiff's employment as their broker when they appointed and authorized it to sell the lots, had the right to terminate it at will, before any contract was effected with a purchaser, subject, however, only to the ordinary requirement of good faith. *Abbott v. Hunt,* 129 N. C., 403; *Sibbald v. Iron Co.,* 83 N. Y., 378; *Coffin v. Landis,* 46 Pa. St., 426; *Young v. Trainor,* 158 Ill., 428; *Bailey v. Smith,* 103 Ala., 641; *Hartley's Appeal,* 53 Pa. St., 212; *Hunt v. Rousmanier,* 8 Wheaton, 174; *Insurance Co. v. Williams,* 91 N. C., 69; *Brookshire v. Voncannon,* 28 N. C., 231; *Wilcox v. Ewing,* 141 U. S., 627. The cases which we have so copiously cited will show the different circumstances under which this rule of law has been applied, and demonstrate the wisdom of it.

There is another principle equally as well settled. A broker who negotiates the sale of property is not entitled to his commissions unless he finds a purchaser in a situation and ready and willing to complete the purchase on the terms agreed upon between him and his principal, the vendor. *Mallonee v. Young,* 119 N. C., 549; 2 Am. and Eng. Enc. of Law, 584; *McGavock v. Woodlief,* 20 How. (U. S.), 221. Can it be that a real estate broker will be permitted by the law to recover his commissions when he has reported to his principals a sale upon terms materially different from those which the latter had stated in their proposal to sell, the offer being thereupon rejected and the property withdrawn from sale? No authority has been cited to us which sustains such

a proposition as an affirmative answer to the question would establish.    It was clearly the duty of the broker, in this case, to communicate to his principals the real facts and the true situation, as no doctrine is better settled in the law of agency than that the agent must give to his principal notice of all facts, relative to the business entrusted to him, which have come to his knowledge and which may materially affect the principal's interests.    Tiffany on Agency, p. 415, sec. 107; *Humphrey v. Robinson,* 134 N. C., 432.    The relation between the agent and the principal being of a fiduciary nature, it results that there must always be the exercise of good faith by the former towards the latter.    The principal reposes confidence in his agent and is entitled to receive in return perfect loyalty to himself and unselfish attention to his business. There should be no conflict between their interests, as the agent must always be free and untrammeled in order to serve his employer with undivided devotion and fidelity to his trust and an unremitting endeavor to promote the success of the matters committed to his charge.    Reinhard on Agency, secs. 239 to 246.    An agent must also obey instructions and observe the terms of the agency; otherwise he does not perform, in the eye of the law, his full duty towards his principal, and is not entitled to receive the compensation for his services promised to him in the contract of agency.

We held, substantially, in *Humphreys v. Robinson, supra,* following the general principles thus stated, that a real estate broker who fails to communicate to his employer any facts known to him and material to the transaction he had in charge was not entitled to damages for the failure of his principal to comply with the contract made by the broker in his name and on his account with a third person.    So here the plaintiff, as agent, failed to disclose to the defendants, who employed it to sell the lots, the facts as it now claims they actually existed.    Its agent reported to them a contract with Corpening and Tennille entirely different from the one he was authorized to make,

and the defendants had the right then and there to reject the
proposition and terminate the agency, which they did, accord-
ing to the findings of the jury.    We cannot imagine upon
what principle of equity—even broadly considered—and cer-
tainly we have failed to discover any principle of law under
which the plaintiff is entitled to a commission as upon a sale
made by it, for surely none has been justly earned.    It is
now the established doctrine of the courts that, in the absence
of any usage, or contract, express or implied, to the contrary,
or conduct of the seller preventing a completion of the bar-
gain by the broker, an action by the latter for his commissions
will not lie until it is shown that he has procured and effected
a sale of the property upon the terms fixed by the vendor.    It
is not enough that the broker has devoted his time, labor or
money to advance the interests of his employer.    Unsuccess-
ful efforts, however meritorious, afford no ground of action.
Where his acts bring about no agreement or contract between
his employer and the purchaser, by reason of his failure in
the premises, the loss of expended and unremunerated effort
must be all his own.    He loses the labor and skill used by
him which he staked upon success.    If there has been no con-
tract, and the seller is not in default, then there can be no
reward.    His commissions are based upon the contract of
sale.    Rapalje on Real Estate Brokers, sec. 75, and cases
cited in the note; *Sibbald v. Iron Co.,* 83 N. Y., 378.    The
broker must also act strictly, or, at least, substantially, accord-
ing to the authority conferred upon him, in order to entitle
himself to the stipulated compensation.    Rapalje on Real
Estate Brokers, secs. 59 and 60.    In one of the cases cited on
the argument by the plaintiff—*McDonald v. Smith,* 108
N. W. Rep. (Minn.), 292—it is said: "A real estate broker,
in order to earn a commission for finding a purchaser, must
either obtain a contract from a proposed purchaser, able
to buy, whereby he is legally bound to buy on the authorized
terms, or he must produce to his principal a proposed pur-

chaser who is able, willing and ready to buy upon the terms authorized. It is not necessary that the principal and the purchaser actually be brought face to face, but the principal must ·be notified that such purchaser has been found and afforded a full opportunity to make a binding contract for the sale of the land on the authorized terms."

If the plaintiff has lost the benefit of its·commissions upon a sale that it could easily have made, the fault was its own, and no blame can attach to the defendants. The mistake it made was in trying to obtain a little better terms from its principal in respect to the time for the payment of the purchase money. It tried to make a sale, contrary to the instructions of the principal, in which payment of the larger part of the purchase money was to be deferred, when, in fact, as it now claims, the purchaser was ready to pay all in cash. It is plain that a cash sale is what the defendants desired, and it was no doubt more advantageous to them. They had at least a right to consider it so when they made the bargain with the plaintiff. The latter was, therefore, by every consideration of good faith, bound to communicate to the defendants the important fact that they could get cash for the property. Instead of doing so, the plaintiff withheld this information until the defendants had exercised their undoubted right to put an end to the agency.

The jury have found against the plaintiff upon the facts, adopting the defendants' version of them. The instruction requested was properly refused, under the circumstances, and the charge of the Court, which was concise and clear-cut, presented the case to the jury in its proper light.

No Error.