W. J. OLIVE v. G. T. KEARSLEY.

(Filed 22 March, 1922.)

1. **Contracts — Brokers — Principal and Agent—Executory Contracts— Revocation—Commissioners.**

    A contract for the sale of land upon commission is terminable before its consummation at the will of either party, when it is silent as to its duration. Where the owner exercises his right to revoke before the broker has procured a purchaser acceptable to him according to the terms of the agreement, the contract remains executory, and the broker, however earnest and beneficial his efforts, is not entitled to his commissions.

2. **Same—Evidence—Questions for Jury—Trials.**

    Where a brokerage contract for commissions for the sale of lands is revocable by the owner at will, and the evidence is conflicting as to whether the owner, after exercising his right to revoke, had procured a purchaser from another source and had independently effected the sale, or whether the plaintiff, suing for his commissions as agent, had performed his obligations in obtaining the purchaser, an issue of fact is presented for the determination of the jury.

3. **Contracts — Brokers — Principal and Agent — Commissions—Agency Coupled With an Interest.**

    To prevent the application of the principle by which the principal may revoke an agency for the sale of land at will, the agency must be coupled with the agent's interest in the subject-matter of the contract, and not merely collateral thereto, as where the agent is interested only in the commissions he is to receive under the conditions of his executory contract.

APPEAL by defendant from *Cranmer, J.,* at July Term, 1921, of LEE.

This is an action by a broker on an alleged indebtedness of $250 for making sale of land. The defendant listed the land for sale with the plaintiff and a number of other brokers, and the same was sold to one Price. The defendant was introduced to Price by one Carter (to whom the defendant paid $25 for making the sale). The plaintiff was allowed to testify over the defendant's objection that the attendance of Price was procured by the "influence of plaintiff," acting through one McGhee, who was dead at the time of the trial. The defendant testified that he sold the land himself to Price, that plaintiff was not there and said nothing to him about selling the land until after it was sold.

The contest was over the right of the defendant to revoke the agency of brokerage. Verdict and judgment for plaintiff; appeal by defendant.

*A. A. F. Seawell* for plaintiff.
*Hoyle & Hoyle* for defendant.

CLARK, C. J. The court instructed the jury: "Now it is the law in North Carolina that when land is placed in the hands of a broker for sale, and that broker has begun negotiations, that the owner cannot take the matter into his own hands and complete the sale and refuse to ·pay commission. Now, if you find from the evidence in this case—it is not refuted that the land was placed in 'the hands of Olive for sale—if you find from the greater weight of the evidence in this case that he had begun negotiations and brought the buyer down, then I instruct you that the defendant could not take the matter out of his hands and avoid paying his commission."

The instruction that if the broker "had begun negotiations that the owner cannot take the matter into his own hands and complete the sale and refuse to pay commission" was error. There was evidence from the defendant which denies that Olive effected the sale. He testified: "I placed my land with Olive for sale. I listed this land with 15 or 20 concerns that sell. I told a number of others that I would pay them to send me a purchaser, among them was Abe Carter, who had come from Rockingham County, and who was the first man who brought Price (the purchaser) to me. Olive said nothing to me about selling the land until after it was sold and the trade closed, then he claimed a commission."

Abe Carter testified that the purchaser, Price, lived on an adjoining farm to his in Rockingham County; that he told him about the Kearsley place, and he agreed to go with him to look it over, and he bought the place from Kearsley.·

The law applicable in this case is thus stated in *Abbott v. Hunt,* 129 N. C., in which, on page 404, it is said: "An agency can be revoked

at any time before a valid and binding contract, within the scope of the agency, has been made with a third party. The only exception is an agency coupled with an interest, and that must be an interest in the subject of the agency, and not merely something collateral, as commissions or compensation for making sale. *Hartley's Appeal,* 53 P. St., 212; 91 Am. Dec., 207, which holds that a power of attorney by which the attorney is to receive as compensation 'one-half of the net proceeds' is not a power coupled with an interest, and is revocable. This case cites a very clear enunciation of the same principle by *Marshall, C. J.,* in *Hunt v. Rousmanier,* 8 Wheat., 174, which is also cited by this Court (as to agencies to solicit insurance) in *Ins. Co. v. Williams,* 91 N. C., 69. In *Brookshire v. Voncannon,* 28 N. C., 231, it is held that a power of attorney is revocable 'at any moment before the actual execution of it.' To same purport, *Wilcox v. Ewing,* 141 U. S., 627; *Mansfield v. Mansfield,* 6 Conn., 559; 16 Am. Dec., 76; Mechem on Agency, secs. 204-210; *Hall v. Gambrill,* 88 Fed., 709. In *Sibbald v. Iron Co.,* 83 N. Y., 378; 22 Am. Rep., 441, it is said: 'Where no time is fixed for the continuance of a contract between broker and principal, either party can terminate it at will, subject only to the ordinary requirements of good faith.' A case on 'all fours' is *Coffin v. Landis,* 46 Pa. St., 426, which holds (p. 434) : 'Where one, as agent for another, contracts to sell the land of the latter in consideration of one-half of the net proceeds of the sale, and there is no stipulation in the contract as to the duration of the employment, the principal has a right to terminate it at any time and to discharge the agent from his service without notice, and the plaintiff (agent) cannot recover for any services rendered, or for his loss of employment after his discharge.' And almost as directly in point are the recent cases, *Young v. Trainor,* 158 Ill., 428 (1895), which holds that 'a real estate broker who produces a customer after his principal has withdrawn his offer to sell, is not entitled to a commission,' and *Bailey v. Smith,* 103 Ala., 641 (1894), which is to the same effect, and *Mallonee v. Young* 119 N. C., 549.

"In *Atkinson v. Pack,* 114 N. C., 597, and *Martin v. Holly,* 104 N. C., 36, the broker had procured a purchaser at the stipulated price before the revocation of the power, and, of course, being an executed contract, the agent was entitled to his commission, and the same might be true where the revocation was in bad faith, just as the contract was about being consummated, the revocation being for the purpose of depriving the agent of his commissions. But such is not the case here."

This has been often quoted and always followed by this Court. In *Thomas v. Gwyn,* 131 N. C., 461, *Abbott v. Hunt, supra,* was reaffirmed, the Court saying that "where no term is fixed for the continuation of a

contract, either party may terminate it at will"; and this was reaffirmed in *Wilmington v. Bryan,* 141 N. C., 671 and 673, which held that a contract of this kind containing no limits as to time is in law a contract terminable at the will of either party.

In *Trust Co. v. Adams,* 145 N. C., 161, *Walker, J.,* states that "When there is no definite time fixed for the employment to sell land upon commission, either party has a right to terminate the agreement at will, subject to the requirement of good faith under the agreement and a sale made in pursuance of his contract." When such broker fails to complete the purchase upon the specified terms before the principal elects to terminate the agreement the principal has the right to terminate the contract if done in good faith.

In *Wright v. Shepard,* 178 N. C., 656, where the defendant, as in this case, claimed that he had revoked the agency and sold the land himself, it was held that this was a question of fact which was properly submitted to the jury by the judge and the verdict against the plaintiff was sustained. *Mr. Justice Stacy* was the trial judge in that case, and the able and instructive brief filed therein for the defendant cites and relies upon *Abbott v. Hunt, supra,* and *Sibbald v. Iron Co., supra,* and *Trust Co. v. Adams, supra,* and thus sums up the doctrine which was stated in those cases by the trial judge and affirmed by this Court: "The broker may devote his time and labor and expend his money with ever so much devotion to the interests of his employee, and yet, if he fails without effecting an agreement or accomplishing a bargain, or abandons the effort, or his authority is fairly and in good faith terminated, he gains no right to commission. He loses the labor and effort which was staked upon success, and in such event it matters not that after his failure and the termination of his agency what he had done proves of use and benefit to the principal."

In *Real Estate Co. v. Sasser,* 179 N. C., 497, it was held, *Brown, J.,* that the interest of an agent in a contract which would prevent the revocation of the agency must be in the subject-matter of the power, and not merely relate to the agent's compensation for its execution, and where the principal contracts for the sale of his land by the agent, the latter to receive whatever he could get for the land over a certain price, and there is no covenant not to revoke, the former may at any time revoke the power before the completion of the deal leaving the broker to an action for damages for the expenses incurred by him and reasonable compensation for the worth of his services rendered before the revocation.

In *Hagood v. Holland,* 181 N. C., 64, it was held by *Stacy, J.,* that "A contract of agency for the sale of land for an indefinite and unstated

time may be revoked at will by the owner in the absence of agreement or covenant to the contrary," citing *Abbott v. Hunt, supra,* and *Real Estate Co. v. Sasser, supra.*

In *House v. Abell,* 182 N. C., 628, the Court held that where the broker, "within the terms of authority given, succeeds in bringing about a contract of sale with a responsible purchaser, he is entitled to stipulated commission or reasonable worth of his services if no definite amount is specified, and his claim therefor is not affected because the principal has seen proper to voluntarily surrender his rights in the contract"; and further, "a broker who has agreed, for compensation, to procure a purchaser for lands has earned his commission when he effects a valid, written contract for sale of the lands upon terms and with the purchaser acceptable to the owner, and the voluntary failure of the vendor to compel him to do so will not defeat the broker's claim for commission." It will be seen at once that there is no conflict in these rulings to the case at bar. In the later case the contract was performed and the sale perfected, but the vendor refused to make the conveyance. But in cases like the present, where the sale was not completed, the principal has the right to revoke the agency at any time before the sale was perfected, or if there is a controversy whether the sale was completed by the party who first "began negotiations," then it was error not to submit that question of fact to the jury.

In the present case there was ample evidence, if believed, not only that the defendant had revoked the agency before the sale was made, but that it was actually made by another agent whom the defendant paid for the service, and he was entitled to have this phase of the evidence presented to the jury.

For this error there must be a

New trial.