F. B. INGLE v. GAY GREEN.

(Filed 27 January, 1932.)

1. **Appeal and Error K c—Decision of Court on former appeal is the law of the case upon subsequent trial and appeal.**

   Where upon a former appeal to the Supreme Court it is decided that the plaintiff's cause of action is not barred by a judgment as of nonsuit, formerly rendered in an action between the same parties, because the allegations and evidence in the second action were not substantially identical, upon a subsequent trial and appeal the decision of the court that the plaintiff was not barred by the judgment as of nonsuit is the law of the case, and the question will not again be considered.

2. **Brokers E d—Evidence held competent on question of arbitrariness of refusal to sell in action by broker to recover commissions.**

   In an action on a contract providing for a division of profits from the sale of land owned by the defendant if the plaintiff should procure a purchaser at a satisfactory price within a certain time, testimony of proposed purchasers procured by the plaintiff that they were ready, able and willing to perform their offer of purchase within the time specified is competent upon the question of the defendant's arbitrariness in refusing to sell.

3. **Trial F a—Where issues present all issuable matters to the jury they are sufficient.**

   Error will not be found on appeal to issues submitted to the jury by the trial court when they present to the jury proper inquiries as to all the essential or determinative matters in dispute, and where a party contends that the issues submitted were improper he should tender other issues for the consideration of the trial court.

4. **Contracts B a—Contract will be construed as a whole to effectuate the intent of the parties.**

   The entire written contract will be construed as to its related terms and expressions so as to effectuate the intent of the parties.

5. **Appeal and Error J e—Admission of evidence will not be held for error where substantially same evidence is admitted without objection.**

   A party to an action who objects to the admission of certain evidence may not maintain his exception on appeal when evidence substantially the same has later been introduced on the trial without objection.

6. **Brokers E d—Testimony of value of land held competent on question of arbitrariness in refusal to sell upon broker's obtaining purchaser.**

   Where it is material upon the trial as to whether a purchaser of lands procured by the plaintiff under his contract with the defendant, offered a reasonable price for the *locus in quo*, it is competent for a witness having experience and observation to testify to the value of the land at the time of the offer to buy, the probative force of the testimony being for the jury.

**7. Brokers D b—Where owner arbitrarily refuses reasonable offer obtained by broker under contract, the broker may recover his commissions.**

Where the plaintiff and defendant have entered into a written contract for the division of profits from the sale of land owned by the defendant if the plaintiff should procure a purchaser at a reasonable price, the reasonableness of the price is not one to be arbitrarily determined by the defendant, and where there is evidence tending to show that the plaintiff had procured a purchaser ready, able and willing to pay a reasonable price, the reasonableness of the price offered is to be determined by the jury under proper instructions from the court, and the plaintiff may recover his commissions if the defendant arbitrarily refused to accept the offers procured.

CONNOR, J., dissents.

APPEAL by defendant from *Harding, J.,* and a jury, at June Term, 1931, of BUNCOMBE. No error.

The issues submitted to the jury and their answers thereto, were as follows:

"1. Did the plaintiff and defendant enter into the contract as alleged in the complaint? Answer: Yes.

2. Did the plaintiff procure a purchaser for the whole of said tract of land during the period of one year from the date of said contract, who was ready, able and willing to purchase said lands at the price and under the terms of said contract, as alleged? Answer: Yes.

3. Did the defendant fraudulently or arbitrarily refuse to accept said offer of sale and thereby breach said contract, as alleged in the complaint? Answer: Yes.

4. What damages, if any, is plaintiff entitled to recover? Answer: $10,000."

Judgment was rendered in the court below on the verdict. Defendant made numerous exceptions and assignments of error and appealed to the Supreme Court.

*Ellis C. Jones and A. Y. Arledge for plaintiff.*
*Alfred S. Barnard for defendant.*

CLARKSON, J. This action grows out of the following contract between plaintiff and defendant: "Asheville, N. C., 14 April, 1925. This form of contract by and between Gay Green, party of the first part, and F. B. Ingle, party of the second part. The party of the first part purchased the T. L. Johnson farm containing 150 acres for $16,000, through the party of the second part with the understanding that both parties hereto are to share all profits equally above the purchase price of $16,000, and each party is to bear equally in all expenses of handling

and selling said farm. Provided a satisfactory sale can be made within twelve months from date. Gay Green, F. B. Ingle."

In *Ingle v. Green,* 196 N. C., at p. 382, after setting forth the above contract, we find: "The proviso, or last sentence, in this contract was inserted by the defendant in his own handwriting. It is conceded that no sale was made within the life of the contract, though plaintiff alleges he produced purchasers ready, able and willing to buy before the expiration of the twelve months' period. But none of the offers was satisfactory to the defendant. There is no allegation that defendant acted fraudulently or arbitrarily in refusing to sell. . . . The record fails to disclose any ground upon which plaintiff is entitled to recover against the defendant in the present action."

In *Ingle v. Green,* 199 N. C., 149, it is held: Where an action upon a contract for the sale of defendant's lands by the plaintiff and the division of the profits therefrom, is nonsuited because the evidence of fraud or arbitrariness on the part of the defendant, in accordance with the contract, were not supported by allegations the judgment of nonsuit will not operate as a bar to a subsequent action brought within the statutory period on the same cause of action where the allegations are not substantially identical with those of the first, but the deficiency in the allegations of the first action are supplied therein and evidence introduced to support them; the doctrine of *res judicata* does not apply.

The case was tried in the court below before a jury, with the result of a verdict for plaintiff. This appeal is from that verdict.

One of the questions presented by defendant was: "Did the court err in overruling defendant's motion for a judgment of nonsuit made at the close of the plaintiff's evidence, and renewed at the close of all the evidence (C. S. 567), upon the ground that there was not sufficient evidence to be submitted to the jury, and upon the further ground that the judgment rendered by the Superior Court of Henderson County in a suit between the same parties on the same contract was a bar to the prosecution of this action?" We think the motions above, for judgment in case of nonsuit, properly overruled. There was sufficient evidence to be submitted to the jury and the plea of *res judicata* not applicable.

In this case, 199 N. C., at p. 152, the defendant pleaded *res judicata.* This Court said, at p. 153; "The defendant set up the plea of *res judicata.* We think the nonsuit should not have been granted by the court below, and there was sufficient evidence to be submitted to the jury, and the principle of *res judicata* is not applicable."

This matter is again "boldly asserted and plausibly maintained" by defendant's able counsel. The argument is persuasive, but not convincing. We see no injustice done. Our former opinion must stand. This

Court does not make contracts, we construe them. The defendant entered into the contract with plaintiff, and, by the finding of the jury, fraudulently or arbitrarily, breached it. We think there was plenary evidence to sustain the jury's finding—a part is hereafter set forth.

We again repeat: "A decision by the Supreme Court on a prior appeal constitutes the law of the case, both in subsequent proceedings in the trial court and on a subsequent appeal." *Harrington v. Rawls,* 136 N. C., 65; *Strunks v. R. R.,* 188 N. C., at p. 568; *Moses v. Morganton,* 195 N. C., at p. 101; *Ingle v. Green,* 199 N. C., at p. 154; *Jessup v. Nixon,* 199 N. C., 125-6; *Fuquay v. R. R.,* 201 N. C., 575.

The defendant tendered no issues, but contends that the issues submitted by the court below were not such as were raised by the pleadings and sufficient to settle the rights of the parties. We cannot so hold. It has been long settled in this jurisdiction that "issues are sufficient when they present to the jury proper inquiries as to all the essential matters or determinative facts in dispute." *Mann v. Archbell,* 186 N. C., at p. 74. "If the defendant did not consider the issues submitted to the court proper and relevant, it was his duty to tender other issues and having failed to do so he cannot now complain." *Greene v. Bechtel,* 193 N. C., at p. 99.

In construing a contract "The intent of the parties is arrived at by taking into consideration all the paper-writings relating to the controversy," etc. *Peeler v. Peeler, post,* 123.

We think the contract signed 14 March, 1925, "purchasing 189 acres of land more or less," signed by J. R. Reid, T. L. Johnson and M. E. Johnson, and assigned by J. R. Reid, competent and material to the controversy. The assignment is as follows: "I hereby transfer all my right, title and interest to Gay Green and F. B. Ingle." Some of the evidence bearing on the controversy, is as follows:

George M. Burns, testified, in part: "know Mr. Ingle and also know Gay Green. I visited the Tom Johnson farm in 1925. Mr. Ingle carried me there in view of buying it. I looked at it. I made an offer on it. . . . The second was $300 an acre. The terms of that were that the payments were to be made one-third cash, balance 1, 2 and 3 years secured by deed of trust on the property. . . . Q. At that time state whether or not you were ready, able and willing to comply with the terms of your offer, if it had been accepted? A. At that time I was ready, able and willing to comply with the terms of my offer, if it had been accepted."

This and similar evidence from the plaintiff's witnesses, Revis and Outlaw, was objected to and assigned as error. We think the evidence competent. One of the elements essential to the plaintiff's right of

recovery, was that he had found and submitted purchasers who were ready, able and willing to buy at the prices and upon the terms shown in evidence, which were alleged to have been satisfactory in fact. In order to show the ability, willingness and readiness to buy, these witnesses were asked specific questions to that end, all of whom testified that they were, at the time they made their offers, ready, able and willing to buy. These parties actually made the offers, there is nothing imaginative, conjectural or speculative about the evidence. There is no better way to prove one's readiness, ability and willingness to carry out a transaction than to put the party on the witness stand who offered to do it, and let him testify in regard to the matter.

The witness, George M. Burns, further testified: "To the best of my recollection that was between the 5th and 15th of July, when I talked to Mr. Ingle about it, in the year 1925. I saw Mr. Green after that and had a conversation with him. I met Mr. Green one night in the old Langren Hotel. We had a conversation in regard to the piece of property. I met him there and made the same offer there that I had made to Mr. Ingle and he wouldn't accept it at all, wouldn't consider it. He didn't come out and say specifically why, but intimated in (witness stopped by objection of defendant). I don't remember the conversation just as it took place at that time, but he refused the offer I made him on the terms and also the price and said it was a very valuable piece of property and he could realize more out of it in the future."

We do not think the authorities cited by defendant applicable under the facts and circumstances of this case. This kind of evidence was later unobjected to by defendant, as shown by the evidence of Mary W. T. Connally, who testified, in part: "I know F. B. Ingle, have known him ten years, since 1919. Know the property in Henderson County known as the T. L. Johnson farm, on Mills River, very well. Mr. Ingle took me out there to look at it when I was thinking of buying land. He first took me in the early summer 1925, to look at this land; I was interested in purchasing land in that community; I did own other land in that community; I should say Mr. Ingle took me three or four times to this property; I considered purchasing it and made Mr. Ingle an offer for the land. My offer was for the purchase of the entire Johnson farm. I made him an offer of $300 an acre, one-third cash and the balance in one and two years. In reply to my offer Mr. Ingle said that Mr. Green would not accept it. . . . I most certainly was ready, able and willing to have complied with the terms of my offer, if it had been accepted by Mr. Green. You might ask the Central Bank what I was worth financially at that time. Certainly more than enough to have bought not only Mr. Green's one piece of property but several others.

I made this offer for the land through Mr. Ingle in the early summer of 1925. I subsequently bought other farm lands in Mills River section and Black Mountain."

In *Ledford v. Lumber Co.,* 183 N. C., at p. 616, the following is stated to be the law: "To like effect are the decisions in *Smith v. Moore,* 149 N. C., 185, and *Blake v. Broughton,* 107 N. C., 220, where it was held that the admission of improper evidence was harmless when it appeared that the fact thereby sought to be shown was otherwise fully and properly established." *Tyler v. Howell,* 192 N. C., at p. 437.

W. Frank Cathey, testified in part: "It was in May or June, sometime, in 1925, that was the year he bought it. Mr. Green said that he didn't care to sell it right then, for a year or two, might want to build on it a little later. He was talking to Mr. Johnson, Tom Johnson. Mr. Johnson was talking about wanting to buy a little tract back to build a home on it was how I come to hear the conversation."

Thos. L. Johnson, testified in part: "Mr. Green made a statement to me about building on it, said he was very fond of his mother, which most people ought to be, he said, 'She is very much impressed with this place up here and likes it, and I want to build her a fine house, brick veneer. I want to give her a good place and everything I can as long as she lives.' That was his idea. That was in May, I sold in April, 1925, this was in May that Mr. Green said that. It was the same year he bought the land 25 May, 1925."

S. D. Hall, testified in part: "Q. What is your opinion as to the reasonable market value of the Tom Johnson farm in the year from 14 April, 1925, to 14 April, 1926? A. I think around $200 an acre would be the fair value of it." Defendant objected and assigned error to the above question. It was competent under the contract and on the issues submitted. It was some evidence, the probative force was for the jury.

The defendant denied the material evidence of plaintiff. On cross-examination, he testified, in part: "Q. You were expecting to make a good profit? A. Yes, I wanted some, at least more than I gave for it. Q. And you would have been satisfied with any reasonable profit? A. Yes. Q. If he had brought a valid offer for $40,000 for the farm, or $300 an acre, you would have thought that a very satisfactory profit? A. Yes. Q. That was what you intended when you wrote in the contract 'provided a satisfactory sale can be made within 12 months from date?' A. Yes."

Plaintiff testified in part, unobjected to: "Yes, Mr. Green and I discussed it as to why it was being bought. I told him that we could get the option for $1,500. The land cost $15,000 and he said he would pay $16,000 and I would pay $500. Mr. Green said 'We will buy it at

that price and make some money on it.' That was the purpose of buying it, to resell again and make some money on it. I was to resell it. He said, 'I will pay in $16,000 and you pay $500 and we will go fifty-fifty over and above $16,000 and half the expense of selling and operating it will be deducted, and you go ahead and work on it and find purchasers to buy it, and we will sell it for a profit.'"

The court below charged the jury as follows: "He did not have the legal title but his right was based upon his procuring a purchaser who was ready, able and willing to buy, and would buy, at a price that was satisfactory to himself and the defendant, and it was the duty of the defendant under that contract when within a year the plaintiff produced such purchaser who was ready, able and willing to buy and would buy, if the defendant would accept the proposition and make a deed if the price was satisfactory—it was the duty of the defendant under his contract to accept and make conveyance and when expenses and purchase price of $16,000 was deducted, if there was any profit, to divide it equally between plaintiff and defendant, whatever that was. He has the right to refuse to do so, however, that is he had the right to fix a satisfactory price in his own mind provided he did so honestly with the bona fide intent to carry out the contract. If he formed and fixed in his mind when this contract was signed that he would not accept any price however satisfactory it might be otherwise for the reason that if he just refused to accept anything that was offered until the year expired, then he could come out and take up the proposition he made, or any other proposition that he could receive, whether it was more or less, and retain all the profits himself—if he refused to accept for that purpose the court charges you that would be a dishonest purpose, that would be a fraudulent purpose, it would be an arbitrary purpose."

The defendant duly excepted and assigned error to the above portions of the charge. We think the charge correct, under the facts of this case.

In *Crowell v. Parker,* 171 N. C., at p. 396, the law is thus stated: "But it must be borne in mind that if an agent, who is employed to sell real estate, finds a purchaser who is ready, able and willing to purchase it on the authorized terms, his right to commissions will not be impaired by the default of his principal in refusing to consummate the sale. The seller cannot complain if he is made to pay commissions because, by his own fault, he has lost a bargain upon his own terms, *Parker v. Walker,* 86 Tenn., at p. 569, where it is said: 'To procure a purchaser of real estate not only implies that the purchaser shall be one able to comply, but the further idea, that the seller and the purchaser must be bound to each other in a valid contract. To this we must agree. An oral agreement upon the part of the purchaser would

not be a valid agreement; and if he refused to complete the sale after such oral agreement, without fault upon the part of the seller, the obligation of the broker would not be fulfilled, and he could not recover his commissions. If, on the other hand, the purchaser was not only able, but willing, to complete the sale, and the vendor then refused to sell, or is unable to fulfil the terms upon his part. or make a good title, or the trade falls through for any other default, upon the part of the seller, the commissions are nevertheless earned,' " citing numerous authorities.

By the former appeal, it has been established as the law in this action that if the plaintiff acted "fraudulently or arbitrarily" in refusing to sell upon tender to him by the plaintiff of a sale that in fact was "satisfactory," then the plaintiff is entitled to recover.

The jury has found, on competent evidence, the issues against defendant, this is for them to determine and not us. We have heard the argument of counsel, read the record and briefs and examined the exceptions and assignments of error made by defendant in this action with care, and can find no prejudicial or reversible error.

No error.

CONNOR, J., dissents.