The defendant was the owner of valuable real estate in the city of Winston-Salem, known as the Gilmer Property, and entered into a contract with plaintiff wherein it was agreed that plaintiff should act as real estate broker, offering the property for sale at the price of $50,000.00, *Page 442 
and that if plaintiff secured a purchaser for the property at this price, he should receive as compensation 5 per cent of the purchase price.
Plaintiff complains that he fulfilled his contract by securing a purchaser, ready, willing and able to take title to the property and pay therefor the sum of $50,000.00 — the agreed price — and submitted the name of the purchaser to the defendant, which thereupon withdrew its offer of sale, and has refused to comply with its contract or compensate defendant as agreed.
The defendant denies that plaintiff had produced a bona fide purchaser at all in compliance with the terms of the contract and, therefore, denies that it owed the plaintiff anything.
The contract was evidenced by a series of letters and telegrams, amongst which those most pertinent to decision are a letter of 20 December, 1940, by plaintiff to defendant, in which the plaintiff wrote to defendant that the offer for the property which he had secured would not hold good longer than 24 December, and the answering telegram from defendant, as follows:
"Newark N.J. 1940 Dec. 24 PM 4 21
"T E Johnson First National Bank Bldg Wn
will accept fifty thousand cash for Gilmer property if sale closed withinthirty days. This property has frontage of 125 feet on Main Street and runsthrough to Church Street for distance of 203.70 feet. Company does not holdtitle to the north alley.
Mutual Benefit Life Insurance Co."
The defendant then wrote to plaintiff as follows:
"THE MUTUAL BENEFIT LIFE INSURANCE COMPANY
Newark, New Jersey
December 26, 1940. "Mr. T. E. Johnson, First National Bank Building, Winston-Salem, North Carolina.
"Dear Mr. Johnson:
"In favor of the 20th instant, relative to the Gilmer property, our R. E. 3358, you advised us that in telephone conversation with your client, he stated that his offer of $50,000 for the same would `stand good until December 24th but no longer.' *Page 443 
"We were enabled on the 24th instant to have our Directors give the matter of sale of the property consideration, and we confirm our telegram of the twenty-fourth to you, which read as follows:
"`Will accept fifty thousand cash for Gilmer property if sale closed within thirty days. This property has frontage of 125 feet on Main Street and runs through to Church Street for distance of 203.70 feet. Company does not hold title to the north alley.'
"If you will give us the name of the purchaser, the amount to be paid at this time, and the date of the closing of the sale, we will have the contract for sale of the property prepared, and send same to you for approval.
 Yours very truly, ROBERT C. THOMSON, Assistant Treasurer."
Plaintiff then testified:
"I communicated the acceptance of this offer as contained in this telegram of December 24, to Mr. Bert Bennett. I know that Mr. Bennett was ready, able and willing to comply with this offer — with the acceptance of this offer. As far as the Mutual Benefit Life Insurance Company was concerned, he was going to pay cash for it. Under the arrangements I had with Mr. Bennett, he was to pay the Mutual Benefit cash."
Thereupon plaintiff put in evidence the following telegram:
 "CFA2 15 64 Ser-Wux Tdn Newark N.J. 3 33 6P 1941 Jan 3 PM 4 03
"T E Johnson
 First National Bank Bldg Wn
"We agreed to accept fifty thousand dollars cash for Gilmer propertybecause you stated you had purchaser at that price stop In view of factthat you apparently have no purchaser who has made firm offer we rescindour offer to sell made in telegram December 24 and in letter December 26stop This action is for our own protection and to avoid complications.
The Mutual Benefit Life Insurance Co."
Plaintiff, resuming, testified that he had no written contract with Bert Bennett to take the property, but had his word. He had a conversation over the telephone with Mr. Thomson, who represented the Insurance Company, but did not give the name of the prospective purchaser at the time. That he did not know which one of the parties they would *Page 444 
want the deed made to — Mackie and Bennett, or the Quality Oil Company, or Bert Bennett, since Bennett had business relations with Mackie, and was largely interested in the Oil Company. Also, plaintiff gave the three names in his wire message in order to prevent defendant's cutting in with its own prospects, whose names had been withheld from plaintiff. That he communicated the name of Bennett with the three names wired in response to defendant's request to name the purchaser.
T. C. Gough, a witness for plaintiff, testified that he knew of the transaction between plaintiff and Bennett with reference to this deal. Conversations between this witness and Bennett were excluded. Bennett had since died. Witness testified that Mr. Bennett had asked him to have made up an estimate of the operating expenses of the building, including taxes, heat, light, water, etc. The statement was put in evidence bearing ink figures in the handwriting of Mr. Bennett. Witness testified that the telegram of December 24, accepting Mr. Bennett's offer, was brought to him and delivered by him to Mr. Bennett. That he did not know about it until Mr. Bennett had told him "he was going to take it."
C. T. Lineback, an officer of the Wachovia Bank Trust Company in the Commercial Loans Department, testified that Bennett made an application in December, 1940, for a loan of $30,000.00. Conversation between this witness and Bennett, since deceased, was excluded, over plaintiff's objection and exception. Witness would have stated that Bennett said he wanted the loan to pay the purchase price of the Gilmer Building, for which he was to pay $50,000.00. The loan was approved, but never negotiated. The court excluded the proposed testimony of this witness that Bennett said he could draw all of the money out of the company and pay in cash, but he did not want to hit the company that hard.
C. E. Fetter, a building contractor, testified that he inspected the Gilmer Building at Mr. Bennett's request in the latter part of November or December, 1940, and reported its condition to him.
At the conclusion of plaintiff's evidence, the defendant demurred to the evidence and made a motion for judgment as of nonsuit. The motion was allowed, and plaintiff appealed, assigning error.
Under the view taken by the court as to the principle sustaining the judgment of nonsuit, plaintiff's exception to the exclusion of evidence tending to show there was a bona fide commitment on the part of Bennett as purchaser of the property becomes immaterial. It is considered that it was the duty of plaintiff to make a full disclosure to the defendant in response to its request for the name of the purchaser; *Page 445 Trust Co. v. Adams, 145 N.C. 161, 58 S.E. 1008 — that it was required that he should produce a purchaser willing, ready and able to take and pay for the property. Crowell v. Parker, 171 N.C. 392, 88 S.E. 497;Gerding v. Haskings, 141 N.Y. 514, 36 N.E. 60; McGavock v. Woodlief, 20 Howard (U.S.), 221, 15 L.Ed., 884; Kaercher v. Schee, 189 Minn. 272,249 N.W. 180, 88 A.L.R., 294; Am. Law Inst. Restatement, Agency, Vol. 2, pp. 1038-1041, sec. 445. Plaintiff's counsel refers us, also, to RealEstate Co. v. Moser, 175 N.C. 255, 95 S.E. 498; Clark v. Lumber Co.,158 N.C. 139, 73 S.E. 793; Aycock v. Bogue, 182 N.C. 105,108 S.E. 434; Ingle v. Green, 202 N.C. 122, 162 S.E. 476; Harris v.Trust Co., 205 N.C. 530, 172 S.E. 177; Veasey v. Carson (Mass.),58 N.E. 171, and to 8 Am. Jur., 1038-1039. These authorities are not thought to be at variance with the conclusion reached by the Court on the crucial point of performance of the contract as here discussed.
When called upon to name or produce the purchaser, which, according to his advice to defendant should have been shortly after December 24, at which time his offer to the "prospect" would have been accepted, plaintiff telegraphed the names of three prospects, some of whom he admitted were not purchasers, and out of them did not distinguish the purchaser. Whatever his reasons, the Court is of opinion that his performance in this respect was less than his contract required, and justified the defendant in withdrawing its offer.
The judgment of the court below is
Affirmed.